No. 16.—JACOB LOWE, administrator, plaintiff in error, *vs.* RHODA MORRIS, and others, defendants in error.

[1.] Where, by the express terms of a deed of marriage settlement, it was declared, that the husband should have the use and benefit of the slaves mentioned therein, for and during his natural life, without account: *Held*, that the husband took a life estate in the slaves.

[2.] According to the provisions of the 12th section of the Act of 1764, a trustee in this State, is entitled to compensation for the time, and extraordinary trouble, and pains, necessarily bestowed in the management of the trust estate.

[3.] Where a married woman had the fee simple title to certain slaves, and her husband only a *life estate* therein, and her trustee, at *her request*, paid off the debts of her husband for the protection of the trust property: *Held*, on a bill filed by husband and wife, against the trustee of the wife, for an account of the trust property, it was competent for the trustee to shew, in discharge of his liability, the extent to which he had paid the husband's debts out of the trust funds, at the request of his *cestui qui trust*.

In Equity, in Crawford Superior Court. Tried before Judge POWERS. September Term, 1852.

This bill was filed by Morris and his wife, Rhoda Morris, formerly Rhoda Jenkins, against Allen Marshall.

The bill alleges, that in 1837, complainants intermarried, previous to which they entered into a marriage settlement, by which certain negroes were settled upon complainat, Rhoda, and Matthew A. Marshall appointed trustee. The following is a copy of the marriage contract:

GEORGIA, CRAWFORD COUNTY:

Articles of agreement of three parts made and entered into between Richard Morris, of the County of Jones, in said State, of the first part, Rhoda Jenkins, of the County of Crawford, of the second part, and Matthew A. Marshall, of

the County of Jones, of the third part, witnesseth, that where as, the said Rhoda Jenkins is possessed, in her own right, of certain negro slaves, four in number, to wit, a woman, Henny, about thirty years of age, and her three sons, Major, nine years old, Barnet, about seven years old, and John, about five years old; and, whereas, a marriage is about to be had and solemnized between the said Richard and Rhoda; and whereas, the said Richard Morris is likewise possessed, in his own right, of certain negro slaves, twelve in number, to wit: George, a man, about twenty-two years old; Lewis, a boy, about nineteen years old; Solomon, a boy, fifteen years old; Jack, a boy, about eight years old; Columbus, a boy, about five years old, and Henry, a boy, about three years; also, Patty, a woman, about twenty-two years old; Clary, a girl, about twenty years; Betty, a girl, about fifteen years old; Susan, a girl, four years old, and the child of Patty and the child of Clary. Now, in order to secure the said named negroes to the use of the said Rhoda, so that those now owned by said Rhoda shall not, by reason of the said contemplated marriage, vest in and become the property of the said Richard Morris; and also, that the said described negroes, the property of the said Richard Morris, may be vested in the said party of the third part for the use hereinafter created, the said party of the first part, as well in consideration of the said contemplated marriage as the sum of five dollars, to him in hand paid by the said party of the third part, the receipt of which is hereby acknowledged, and the said party of the second part for, and in consideration of the sum of five dollars, to her in hand paid by the said party of the third part, the receipt of which is hereby acknowledged, and the marriage about to be solemnized, to wit: It is covenanted and agreed, and the said parties of the first and second part do, in consideration of the premises, bargain and sell unto the said party of the third part, the above described sixteen negroes in trust for the said party of the second part, and her heirs forever; to have and to hold the said sixteen ne groes in trust for her, the said party of the second part and

her heirs forever ; and it is hereby covenanted and agreed, by and between the parties to these presents, that the said party of the first part, shall have the use and benefit of the sixteen slaves, without account, for and during his natural life.

In testimony whereof, the said parties to these presents, have hereunto set their hands and affixed their seals this the 22d day of December, eighteen hundred and thirty-seven.

RICHARD MORRIS, [L. s.]

her

RHODA ⋈ JENKINS, [L. s.]

mark

MATTHEW A. MARSHALL, [L. s.]

Signed, sealed and delivered in presence of

FRNCES H. MURDOCK,

THOS. H. STEPHENS, J. I. C.

Marshall subsequently removed from the State.    Judgments were obtained against complainant, and *fi. fas.* were levied upon a portion of the property, and some of the negroes sold. Allen Marshall was appointed a trustee, upon application by complainant, to Judge TRACY, then Judge of the Flint Circuit, who accepted the trust, and undertook the management of the property.   The bill charges that Allen Marshall sold some of the negroes, and has refused to account for the purchase money.

The bill prayed that Allen Marshall might be decreed to come to an account with complainants, and he be removed from the trusteeship.

Allen Marshall answered the bill, in which he stated, that all the property sold had been disposed of in payment of debts due by complainants, and in taking care of and protecting said trust property.

He also claimed compensation for his trouble and labor in discharging the various duties imposed upon him by his trusteeship.   The items of said claim were set out in the answer, and consisted of a per centum on moneys received and paid out, counsel fees, &c. &c., and debts paid by him for com-

plainants.   After filing his answer, Marshall died, and Jacob Lowe was appointed his administrator.

On the trial, it was proved that Mrs. Morris stated to the defendant that she wished the debts of Richard Morris paid, in order to prevent the trust property from being harrassed.

The defendant proposed to prove the value of his labor and trouble in attending to and protecting the trust property. Counsel for complainant objected, which objection was sustained by the Court, and counsel for defendant excepted.

He also offered in evidence, certain claims against Richard Morris, which he alleged he had paid off.   The Court rejected the testimony, and counsel for defendant excepted.

The Jury found a verdict for complainants.

Whereupon defendant moved for a new trial, upon the following grounds—

1st.  Because the decree of the Jury is contrary to evidence.

2d.  Because the decree is contrary to law.

3d.  Because the Court refused to permit defendant to introduce in evidence, a note and certain *fi. fas.* being debts against Richard Morris, alleged to have been taken up by Allen Marshall, on the ground, as held by the Court, that there was no sufficient evidence before it of authority from Rhoda Morris to Allen Marshall, trustee, to pay said debts.

4th.  Because the Court refused to permit the defendant to prove to the Jury the labor and trouble of Marshall, as the trustee, and the value of his services, as trustee, holding that he was not entitled to retain any amount for the same.

5th.  Because the Court refused to allow the defendant to show that the trust property in the possession of complainants, had yielded an annual net profit, and to allow the said Marshall the hire in his hands, with a sufficiency of the net profits, to reimburse him for the amount advanced for said Richard Morris' debts.

The Court overruled the motion for a new trial, and this decision is brought up for review.

Hunter and S. T. Bailey, for plaintiff in error.

Lowe vs. Morris and another.

S. & R. P. HALL, POE & NISBET, for defendants.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The first question to be settled in this case is, what shall be the proper construction of the deed of marriage settlement entered into between Morris and his wife, *prior* to their marriage. The deed of settlement expressly declares, that Morris shall have the use and benefit of the sixteen slaves mentioned in the deed, *without account, for and during his natural life.* By the provisions of this deed of marriage settlement, the fee simple title to the negroes was vested in Mrs. Morris, subject to the *life estate* of her husband, Richard Morris, who was to have the use and benefit thereof, during his natural life, without account. The *life estate* of Richard Morris in this property was therefore *liable for the payment of his debts.*

This bill was filed by Morris and his wife, against the trustee of Mrs. Morris, calling upon him to account for the trust property which came into his hands as her trustee. The answer of the defendant is quite full, and denies the equitable claims of the complainants; shews that the trust property was greatly embarrassed by the debts of Morris, and that some of it had been sold by his judgment creditors, in satisfaction of his debts; that suits had to be instituted for the recovery of the property, and much time, trouble, and money, was necessarily expended by the trustee in protecting the trust property, for the benefit of his *cestui que trust.*

On the trial, the trustee offered to prove, by competent evidence, offered for that purpose, what his time and services were worth in the management and protection of the trust property, which evidence the Court rejected.

[2.] That trustees have an inherent right to be reimbursed all *expenses properly incurred,* in the execution of the trust devolved upon them, is well settled. *Hill on Trustees,* 570–1. But that is not the *precise* question in this case : the precise question here is, whether a trustee is entitled to compensation

for his *time* and *services,* in the management of the trust pro-
perty, over and above that allowed by the 11th section of the
Statute of 1764.   The general doctrine upon this subject,
maintained in the Courts of Great Britain, as shewn by Chan-
cellor *Kent,* in *Manning vs. Manning,* (1 *John Ch. Rep.*
527 ;) and in *Green vs. Winter,* (*Ib.* 26,) is, that the trustee
is not entitled to compensation for his *time, pains, and trouble,*
in the execution of his trust ; though, in *Green vs. Winter,*
it was held, that the trustee was entitled to receive an allow-
ance *per diem* for *his time and expenses of travel.*

Mr. Justice *Story,* in a note to his Commentaries on Equity,
refers to the case of *Manning vs. Manning,* and declares,
that " he has not been able clearly to see, or so strongly to
approve the *policy* of the rule" stated in that case ; for, says
he, "No one can reasonably expect any trustee to devote his
time or services, to a watchful care of the interests of others,
when there is *no remuneration for his services,* and there must
often be a positive loss to himself, in withdrawing from his
own concerns, some of his own valuable time."   2 *Story's
Com. on Equity,* 512, *note to* §1268.   The rule, as established
in Great Britain, and which Chancellor *Kent* considered au-
thoritatively binding upon him, has been altered in this State,
by the 12th section of the Act of 1764.   *Prince,* 225.   This
Act contemplates compensation to be made to trustees for
their *extraordinary care, trouble, and pains,* in the manage-
ment of trust estates ; therefore, the evidence offered, ought,
in our judgment, to have been admitted.

[3.] The defendant set up in his answer, that he had paid
off sundry demands against Richard Morris, at the request
of Mrs. Morris, his *cestui que trust,* which demands were spe-
cially stated, and set forth in the answer.   The defendant
offered said demands in evidence to the Jury, for the purpose
of shewing payment thereof by him, he having first proved
by Samuel J. Ray, that Mrs. Morris told the defendant, she
wanted him to pay off all the existing debts of Richard Mor-
ris, (who had a life estate in the property) on account of the
trouble and vexation they gave to the trust property, which

evidence so offered, was rejected by the Court.   Morris being one of the complainants, and having a life estate in the property, which was subject to the payment of his debts, it was competent for the defendant, as against Morris, who was seeking to make him account for the hire of the negroes during his lifetime, to shew, that he had paid off his debts to the amount of such hire, or to whatever extent he had in fact paid off the same.   The evidence was competent as against Mrs. Morris, for the reason, she requested the trustee to pay off the debts of Morris, in order to *protect the trust property.*

We do not intend to say, that the testimony offered, is *per se,* evidence of *payment* by the trustee, without further proof of payment thereof by him; but we intend to hold, that the defendant had the right to introduce before the Jury, the evidence of Morris' indebtedness, and then to prove payment thereof, if he could do so; and to the extent he proves such payment, will he be entitled to credit therefor.

Although we do not find it necessary to express any opinion in regard to the verdict being contrary to law and the evidence, yet, we think the weight of the evidence, as shewn by this record, was in favor of the defendant.

Let the judgment of the Court below be reversed.