WILLIAM R. PHILLIPS, plaintiff in error, *vs.* WILLIAM SOLOMON, defendant in error.

Section 2121 of the Revised Code, of this State, providing that "the obligation of the surety is accessory to that of his principal, and if the latter, from any cause, becomes extinct, the former ceases, of course" is an affirmance only of the common law, and by the words "from any cause" is meant any cause dependent on the act or negligence of the creditor, and not such a cause as the discharge of the principal under the bankrupt law, which is beyond the control of the creditor, and by force of the laws of the land.

Bankruptcy. Surety. *Lex Loci Contractus.* Before Judge HOPKINS. Fulton Superior Court. October Term, 1871.

On the 22d of May, 1822, at Atlanta, Georgia, J. J. Morrison gave to Phillips his promissory note, due six months thereafter, with said Solomon as his security thereon. Upon this note Phillips sued Morrison as Maker, and Solomon as security. Morrison pleaded that on the 21st of January, 1869, he was "legally released" from said contract by a discharge in bankruptcy granted to him by the District Court of the United States, for the Northern District of Georgia. Solomon pleaded among other things "that he entered into said contract on the 22d of May, 1866, in said State, solely as a security for said maker," that said maker on the 30th of May, 1868, filed his petition in said United States District

Phillips *vs.* Solomon.

Court for a release from all debts, claims, liabilities and demands which could be proved against his estate in bankruptcy, under the Act of Congress of the United States, etc., approved the 2d of March, 1867, and was, on the 21st of January, 1869, legally released from the same by said Court, as appears by his discharge (fully set forth); that said note was at the date of said application and discharge, and is yet, a debt which by said Act was provable against said Morrison's estate, and which existed on the 30th of May, 1868, and is not nor ever was such a debt as is by said Act excepted from the operation of a discharge in bankruptcy; that by that means said Morrison has been discharged from all liability on said note to said Phillips, and said Morrison's obligation on said note on the said day of said discharge became extinct.  And by these means, according to the laws of Georgia, under which said contract was made, the said Solomon's obligation, which was only accessory to that of Morrison, became also extinct.

The note was read in evidence by plaintiff. The discharge as pleaded was admitted. Phillips' counsel demurred to said plea of Solomon, and the demurrer was overruled. Thereupon, no other evidence being introduced, the Court charged the jury that if the obligation of the principal had become extinct by his discharge in bankruptcy, the surety was discharged, and they should render a verdict for the defendants. This was done. Phillips' counsel say the Court erred in overruling said demurrer and in said charge to the jury.

HAMMOND, MYNATT & WELBORN, for plaintiff in error. Discharge of principal by bankruptcy does not discharge surety: 1st Par. on Con., 29; 1st Par. on B. & N., 249; Hilliard on Bankruptcy 307, and cases cited: 6th Ga. R., 257; section 4 Bankrupt Act 1941, section 34 Bankrupt Act 1800; 1st Atkins, 84; 2 Cowp., 525; 7 Bing., 508: Obligation of surety at common law same as by section 2121 R. Code: Ch. on Con., 435; 24th Ga. R., 296; 17th, 536. " Any

cause" means causes stated in next chapter of Code, *i. e.* novation, etc.: Burge on surety, 40. The Bankrupt Act of 1867 says surety is not discharged by discharge of principal, and section 2121 will not be construed to defeat payee's right: Burge on Surety, 293; Smith S. and Con. L., 631, section 486; Ibid, 6873, section 542.

A.. W. Hammond & Son for defendant. *Lex loci contractus* fixes the rights of the parties: Cooley's Con. L., 285; 68 E. C. L. R., 832; 79th, 652; 82d, 910. Story on Conf. of L., 410; 416 R. Code, section 8, and the whole doctrine as passed upon by the Supreme Court of the United States as quoted by this Court in 37th Ga. R., 151, 173; 6th, 439, 440; 38th, 383–4; 39th, 428, 457–8. The Bankrupt Act of 1867 did not change the old law, except in allowing a creditor to *procure* the discharge of principal, and yet hold others bound. The old law is stated in the authorties cited by the opposite side. But sections 2120, 2121, changed the law of suretyship. Congress said the discharge in bankruptcy should not "discharge or release" others in old Acts. In Act of 1867 it added "affect." Parties may contract to be governed by local law without regard to the bankrupt law: Parsons on C., 29, 285; 10th E. C. L., 104. The Bankrupt Act never was intended to be uniform in its *effects*. Examine provisions as to lien, exemption, etc. *It* does not discharge Solomon, but his *contract*, under *lex loci*, does.

McCay, J.

It is admitted that by the express terms of the Bankrupt Law of 1866, section 34, the discharge of the principal in an ordinary contract of suretyship does not discharge the surety.

The point really made in this case is, that the Act of Congress only applies to the contract of suretyship in the general sense of the word surety, as it is understood in the commercial world, and does not cover a case of suretyship of a

special character, as, for instance, one in which it is expressly stipulated that the surety shall *not* be bound if the principal becomes a certificated bankrupt.

We are inclined to think this is a true view of the law; that it was not the intent of Congress to do anything more than to declare that the *Act* should not be *construed* so as to discharge sureties, and that this was done not so much to fix the law of the case, as by way of caution to prevent the Act from being construed to have an effect that, by its terms, it would not have.    In other words, the *contract* of a surety, as it is understood in the commercial world, is always conditioned that the surety shall *not* be discharged by the bankruptcy of the principal : 1 Parsons on Con., 29 ; 1 Parsons on Bills, 249 ; Hilliard on Bankruptcy, 307 ; Ward vs. Johnson, 13 Mass., 152; 1 Atkins, 84; 2 Cowper, 525; 7 Bing., 508.

And section 33 and 34 of the Bankrupt Law of 1866, and the provisions of the Bankrupt Laws of 1841, and of 1800, are only in furtherance of and declaratory of what would have been true, had these sections not been put in the Acts. In my judgment, if such a contract of suretyship should exist, as was conditioned that the surety *should* be discharged, if the principal should be certified by a Bankruptcy Court, then this provision of the Act of Congress would not apply to the case ; the surety would be entitled to the *terms of his contract.*    His contract would be peculiar, and such a one as was not in contemplation of Congress in its passage of the Act.    It is contended that this is just the nature of every contract of suretyship in this State ; that section 2121 of the Revised Code declares the contract of the surety extinct, if, *from any cause,* the contract of the principal is extinct.    It is argued that, as this was the law at the date of this contract, it entered into the stipulations of the parties and became a part of the contract.    But is this a fair construction of our Code ?

It must be remembered, that the object of the codification was not to *make* laws, but to *codify* or *declare* those already

in existence: Act of 9th December, 1858. It is true, that in some instances the Code has *changed* the law, though these changes are less frequent than is supposed. But, in the main, it cannot be doubted that the Code is to be looked at as what it purports to be, a codification of our laws, as they existed at the time, and its provisions are not to be considered as changing the law, unless the intent to change be clear.

Especially is this true of the definitions of the Code. Generally these definitions are very exact, but it would be beyond the scope of the codification to undertake to give *every* qualification or exception which the wide field of the common law makes to the meaning of words or phrases, and the codifiers have not attempted it. The Constitution of 1865 adopts the Code and "such parts of the Common and Statute Law of England and of the Statute Law of Georgia of force in 1860, as is not expressly superseded by, nor is inconsistent with the Code:" Con. 1865, Art. 5, Sec. 5. The Constitution of 1868, Article 9, Section 3, adopts it in pretty much the same language—using after the figures 1860, these words: "As are not superseded by said Code, though not embodied therein."

The language used in section 2120 is almost exactly the language of the English text-books, in defining the obligation of a surety: Chitty on Contracts, 435; Pitman on Principal and Surety, 157.

But in other parts of these treatises, these general words are qualified by this general principle, that the discharge of the principal, which discharges a surety, must be a discharge by some act or neglect of the creditor, and a discharge by *operation* of law being, as it is, against the consent and beyond the power of the creditor, does not discharge the surety.

Mr. Theobold, in his treatise, adds the qualification immediately after the general definition, thus: "The obligation of the surety also, in general, becomes extinct by the extinction

Phillips *vs.* Solomon.

of the obligation of the principal debtor." He then adds: "An exception to this rule takes place whenever the extinction of the obligation of the principal arises from causes such as bankruptcy and certificate, which originate with the law, and not in the voluntary acts of the creditor:" Theobold on Principal and Surety, sec. 114. See, also, Brown vs. Carr, 7 Bing., 508; Langdale vs. Parry, 2 Daniel and Ry., 337. So, too, section 2126 of the Code, and the whole of Article II., of the chapter devoted to principal and surety put the release of the surety upon the acts or neglect of the debtor.

We conclude, therefore, that the Codifiers, in their definition of the contract of suretyship in section 2121, when they used the words "from any cause," merely followed the general language of the books, and did not intend, in those words, to include a cause in which the law was the mover, and over which the creditor had no control, and which his acts had nothing to do with. To suppose that they intended otherwise, would be to assume they intended to *change* the law, and to change it, too, in a particular contrary to the general law of the commercial world, including that common law they were codifying. At the date of this codification, there was no Bankrupt Law of the United States, and no probability of one, and it would be imposing a duty of prescience on the codifiers to require of them, in their *general definitions,* to use language so precise as to cover not only the cases happening day by day around them, but such as might happen in any event.

Judgment reversed.