Elizabeth W. Smith, Respondent, *v.* Guaranty Trust Company of New York, as Trustee under the Will of Elizabeth W. Bates, Deceased, Appellant, and Elizabeth W. Smith, Jr., et al., Respondents.

First Department, June 27, 1945.

*Otis T. Bradley* of counsel (*Patrick J. Kearney* with him on the brief; *Davis Polk Wardwell Sunderland & Kiendl*, attorneys), for appellant.

*Frank W. Chambers* of counsel (*Walter E. Warner, Jr.*, with him on the brief; *Chambers, Clare & Morris*, attorneys), for Elizabeth Winship Smith, plaintiff-respondent.

*Anthony J. Romagna,* guardian ad litem of Elizabeth Winship Smith, Jr. and Francis Leighton Smith, Jr., infant defendants.

*Frederick Zorn,* guardian ad litem for Emily Frances Rees, infant defendant, and unborn children of said defendant.

GLENNON, J. Elizabeth Winship Bates died on February 17, 1928, a resident of the State of Georgia, leaving a last will and testament which was duly admitted to probate in that State. She was survived by her daughter, the defendant Anne Bates Leach, who was her sole heir at law and next of kin, and by two granddaughters, children of Mrs. Leach, namely, Elizabeth Winship Smith, the plaintiff herein, and Emily Frances Rees, who is one of the defendants.

" Item 5 " of the will directs that the entire residuary estate be held by the Guaranty Trust Company of New York, as trustee, until the daughter reaches the age of forty. During that time one half of the income was to be paid to the daughter " for the support of herself and the maintenance and education of her children," Elizabeth and Emily. If in the opinion of any two of five persons named in the will, the income assigned to the daughter was insufficient for the purposes specified, the trustee was authorized and empowered to invade the corpus to the extent certified by the said two persons.

Out of the other one half of the income the trustee was to pay $100 per month to each of the granddaughters until their mother's fortieth birthday and the balance was to accumulate.

When the daughter reached the age of forty the fund was to be divided in four equal parts, one of which was to be paid over to her outright and the trust terminated as to that part. Another of such equal parts was to be continued in trust until the daughter's forty-fifth birthday with the entire income payable to her " for the support and education of her two aforementioned children, and the maintenance of herself." The provisions hereinbefore referred to permitting the invasion of principal were also to apply to this trust. The daughter reached her forty-fifth birthday on December 31, 1941, and the remainder of this trust has been paid over to her pursuant to the provisions of the will.

The remaining two equal parts were to be held by the trustee as two separate trusts, one for each of the granddaughters.

These trusts are now being administered by the trustee. The one here involved is that for the plaintiff.

Under the terms of the trust for her benefit, the plaintiff is to receive graduated monthly payments out of the income until she becomes thirty years of age. The monthly amounts provided are $100 until eighteen years of age; $150 until twenty-one; $200 between twenty-one and twenty-five; and $300 thereafter until her thirtieth birthday. The excess income is to be added to and become part of the principal of the trust. At thirty, the plaintiff is to receive one half of the fund and the balance continued in trust, with the entire income payable to her until she reaches thirty-five, at which time the trust is to terminate and the remainder is to be delivered over to her.

In the event that she dies before distribution of the principal, it is provided that the fund " * * * shall be delivered to the children of such granddaughter so dying; if she dies without leaving children then to my other granddaughter, [Emily Frances Rees], or if she be already dead then to her children her surviving, if any; or if no children her surviving then to my daughter, Anne Bates Walsh; or if she be already dead then to the Decatur Orphans Home and Young Harris College, equally."

The principal of the trust amounts to approximately $950,000, and the annual net income, before taxes, has varied between $30,000 and $37,000 during the years 1941 to 1943.

Plaintiff was born on August 6, 1920. When eighteen years of age, she married one Francis L. Smith. As a result of that marriage two children were born, Elizabeth Winship Smith, Jr., on November 7, 1939, and Francis Leighton Smith, Jr., on May 21, 1941, both of whom are defendants herein.

On January 25, 1944, she testified at the trial of this action that she was twenty-three years of age and unmarried, having obtained a divorce from Francis L. Smith in Columbus, Ohio, on December 15, 1942. She received no money from him at the time of the divorce and no provision was made in the decree for the payment of alimony. The children are in her custody and since the divorce her former husband has made no contribution toward their support. Her only income at the time was the monthly payments of $200 she received from the trust and an annuity of $144 a month from the Guardian Life Insurance Company which terminates on her twenty-fifth birthday, when the monthly payments from the trust are to be increased to $300. Prior to her marriage she had always lived with her mother,

who maintained a home in Atlanta, Georgia, a summer home in the mountains of " North " Georgia, and a winter place of seventy acres in Florida equipped with swimming pool and tennis court. She lived and was brought up as a child of wealth.

On June 29, 1944, plaintiff's father, called as a witness in her behalf, testified that in April, 1944, plaintiff married one George M. Abbott, a master technical sergeant in the United States Marine Corps, in Yuma, Arizona, and that they were then living in El Centro, California. The children, he said, had been left by plaintiff at her mother's home in Florida, but he did not know whether they were still there or who was paying their expenses. As far as he knew, the only income of Sergeant Abbott was $173 per month which he received as a master technical sergeant. On the argument of the appeal it was stated that plaintiff had divorced Sergeant Abbott and subsequently, in January of this year, had married Harold L. Stetson, a lieutenant in the Army Air Forces.

In her complaint plaintiff sets forth that her only sources of income are the trust and the annuity policy, and that her total income of $344 per month from these sources is insufficient to provide for her proper support and the proper support, maintenance and education of her children, and that " special circumstances exist which render it necessary that this court order and adjudge that a greater sum be paid to plaintiff out of the accumulation of income and the current income " of the trust. The application was based upon the Georgia law. The appellant trustee by its pleading and proof contends that the relief sought and obtained is not authorized by the laws of the State of Georgia. The infant defendants appeared by guardians ad litem. The Grace National Bank of New York was made a defendant on the theory that it had advanced certain money to the plaintiff.

The court at Special Term in the judgment entered directed that " Plaintiff is entitled to receive $10,000 per annum, payable out of income of this trust, which sum together with the other income available to plaintiff constitutes a sum reasonably adequate for the maintenance and support of plaintiff and for the maintenance, support and education of plaintiff's children, the infant defendants, Elizabeth Winship Smith, Jr. and Francis Leighton Smith, Jr."

As we have seen, the trust for the plaintiff was not established for the purpose of providing for her support and maintenance

nor for the support of her children. The testatrix saw fit to provide for plaintiff's " support and education " only out of the income payable to the mother, and then only to the mother's forty-fifth birthday. It was the principal of the mother's trust that could be invaded for that purpose even though the trusts for both granddaughters had been set up and they were receiving a portion of the income from their respective trusts. Plaintiff's right to any part of the fund or current income, over and above the monthly allowance, was expressly made contingent upon her attaining the ages designated in the will.

What the testatrix would have done could she have foreseen plaintiff's present circumstances is not the test to be applied here. This case is not analogous to an application for an allowance to a needy relative out of an incompetent's estate, as was the case in *Matter of Flagler* (248 N. Y. 415). Such allowances are made by the court where it appears that the incompetent would have granted the request were she able to act for herself. In those cases, however, the court did what the incompetent would have done with property she then owned. Here the testatrix has disposed of her entire estate by will so that any additional allowance made to plaintiff would be at the possible expense of remaindermen who are able to act for themselves or through guardians.

The application here is similar to one wherein a partial revocation of a trust is sought. The question presented is whether under the circumstances here disclosed, the court may direct advances out of a fund to a beneficiary presumptively entitled thereto, where the interest of such beneficiary might be defeated by the happening of some event in which case others are to take. That issue is to be determined in accordance with the laws of the State of Georgia.

Plaintiff relies upon the following sections of the Georgia Code of 1933:

" 108–118. (3783) *Relief in cases of trust.*— The relief granted, in cases of trust, will always be so moulded and framed as to render the trust effectual, and secure the best interests of all parties."

" 108–426. (3769) *Disposition of income.*— Trustees are authorized, out of the income of the estate, to pay all debts incurred for its protection and preservation, and to appropriate a sufficiency of the balance for the support and maintenance of the beneficiaries of the trust. They may not encroach upon the corpus of the estate, except by order of the superior court."

" 108-428. (3771) *Debts of cestui que trust.*— A beneficiary, having possession of the trust estate, or when the trustee fails or refuses to provide for its protection and preservation or for the support and maintenance of the beneficiary, may contract debts for these purposes. The trust estate of such beneficiary shall be liable for the payment of such debts."

The Georgia Code was prepared pursuant to an Act of the Legislature of Georgia (Ga. L. 1929, p. 1487) authorizing the compilation of a code embracing " in a condensed form the laws of Georgia, whether derived from the common law, the statutes of the state, the decisions of the Supreme Court, or the statutes of England of force in this state." The Code Commission was not authorized to enact new laws or change existing laws. Their sole duty was to declare the law as it then stood. In the preparation of the code the codifiers generally indicated the source from which the various sections were derived. Where doubt exists as to a particular section, the courts of Georgia look to the source of the provision. (*Mitchell* v. *Ga. & Ala. Ry.,* 111 Ga. 760.) Where a section goes further than the authority upon which it is based, it is either disregarded or given an interpretation that conforms to the decision from which it was derived. (*The Mechanics' Bank* v. *Heard,* 37 Ga. 401; *Phillips* v. *Solomon,* 42 Ga. 192; *Gillis* v. *Gillis,* 96 Ga. 1; *Lamar* v. *McLaren,* 107 Ga. 591; *Seaboard Air-Line Ry.* v. *Leader,* 115 Ga. 702; *Wilensky* v. *Central Railway Co.,* 136 Ga. 889; *Harp* v. *Abbeyville Investment Co.,* 108 Ga. 168.)

The original Georgia Code adopted by the Legislature of that State went into effect on January 1, 1863. It included the sections hereinbefore quoted. Those sections were carried over into subsequent codes up to the present Code of 1933. The stated source of the provisions was four cases of the Supreme Court of Georgia decided prior to the Code of 1863. (*Wylly and others* v. *Collins & Co.,* 9 Ga. 223; *Lowe* v. *Morris and another,* 13 Ga. 165; *Burney &c.* v. *Spear &c.,* 17 Ga. 223; *Printup, trustee,* v. *Trammel,* 25 Ga. 240.) Those cases involved trusts for married women which were common in Georgia before the enactment of the Married Women's Property Act of 1866. The trusts were a means of protecting the wife's property from the husband's creditors since under Georgia law a married woman's legal existence was considered merged with that of her husband.

While the plaintiff's witness on Georgia law conceded that the cases cited by the codifiers related specifically to trusts for married women and had no application to the issues here, he

nevertheless insisted that the code sections relied upon were declaratory of the common law of Georgia as it existed prior to 1863. However, the only support he could offer for his position was a statement appearing in *Cornwise* v. *Bourgum* (Ga. Dec. Pt. 2, p. 15), decided in 1842. In that case a motion had been made by a guardian to dissolve an injunction restraining him from selling capital assets of his ward for the purpose of reimbursing himself for advances made in the administration of the estate. His ward owned the entire estate and there were no other interests involved nor was there any question of support. In denying the motion the court in the course of its opinion said: " That a Court of Equity will not suffer or permit a trustee to invade upon the capital of the Trust estate, for the maintenance of his cestui que trust, except under very peculiar circumstances, is a principle now too well settled to be the subject of the least doubt."

No authorities were cited by the court and the decision itself has never been cited in any subsequent case in Georgia. It is undisputed that there is no Georgia case decided prior or subsequent to the *Cornwise* decision, to support the dicta upon which the plaintiff here relies. It is also undisputed that none of the sections of the code hereinbefore quoted have ever been cited by any appellate court in Georgia. Moreover the plaintiff's witness admitted that he was unable to find any Georgia decision construing those sections. There is therefore no precedent in Georgia upon which plaintiff's application may be based.

Georgia is a common-law State in which the common law of other jurisdictions, including England, is given effect. (*Harris* v. *Powers,* 129 Ga. 74; *Grimmett* v. *Barnwell,* 184 Ga. 461.) The great weight of authority at common law does not sustain the judgment entered at Special Term. The rule that the court may not accelerate the enjoyment of a fund by directing advances to a contingent beneficiary where there is a remainder over is well summed up by Lord Eldon in *Marshall* v. *Holloway* (2 Swanston 432, 436) wherein he said in part: " The Court has never gone farther than this, that though the words of the will do not authorize the application of interest to the maintenance of the infants, yet if it can collect before it all the individuals who may be entitled to the fund, so as to make to each a compensation for taking from him part, it will grant an allowance for maintenance; but if the will contains successive limitations under which persons not in being may become entitled, it is not sufficient that all the parties then living,

presumptively entitled, are before the Court, for none of the living may be the parties eventually entitled to the enjoyment of the property. In such a case, the order would be, in effect, to give for the maintenance of one person the property of another."

That rule was applied in the earlier cases of *Lomax* v. *Lomax* (11 Ves. Jr. 48) and *Kebble Ex Parte* (11 Ves. Jr. 604). The soundness of the principle has been generally recognized in this country. (*Petition of Ann Fero and David Fero,* 9 How. Prac. 85; *In the Matter of Davison,* 6 Paige Ch. 136; *Deen* v. *Cozzons,* 7 Robt. 178; *In the Matter of Ryder,* 11 Paige Ch. 185; *Matter of Renn,* 177 Misc. 195; *Longly* v. *Hall,* 11 Pick. [Mass.] 120; *Miles* v. *Wister,* 5 Binn. [Pa.] 477; *Knorr* v. *Millard,* 52 Mich. 542; *Pitts* v. *R. I. Hospital Trust Co.,* 21 R. I. 544; *In Re Lucey,* 98 N. J. Eq. 314; *Stewart* v. *Hamilton,* 151 Tenn. 396; *Ruggles* v. *Tyson and others,* 104 Wis. 500.)

That the law in Georgia would be the same is indicated by a recent decision of its Court of Appeals, Division No. 2, in *McKenzie* v. *Perdue* (67 Ga. App. 202) decided in 1942. By statute the Georgia Supreme Court and the divisions of its Court of Appeals are required to announce their decisions by a syllabus or headnote which is written by the court. The syllabus is as valid and binding as Georgia law as if it appeared in the opinion proper. The third headnote written by the court in *McKenzie* v. *Purdue* (*supra*) reads in part as follows: " A will which gives to a minor a part interest in the income of the property devised, in trust until he reaches the age of twenty-one years, at which time the fee-simple title is to vest in him, can not be so altered by the beneficiary or by the court as to free the interest of the minor from the trust during his minority."

The testimony in this case reveals that plaintiff has lived beyond her means and undoubtedly is in need of additional funds. However, we can find nothing in the laws of the State of Georgia that will aid the plaintiff in her attempt to break down the provisions of the trust, which clearly indicate the intentions of the testatrix as to the disposition to be made of her estate. While we are not unmindful of the fact that within a few years plaintiff is to receive one half of the fund, and that the $10,000 additional yearly payments permitted by the judgment appealed from may be of greater benefit to her now than the substantial sum she is to receive later, still until she reaches thirty years of age she has only a contingent interest in the fund and any advances made to her might prove to be at the

expense of the remaindermen. The advances would also be against the wishes of the testatrix as expressed in the will, which under Georgia law is considered to be " as strong as any statute, as high as the constitution itself." (*Olmstead, by next friend,* vs. *Dunn et al.; Dunn et al., by next friend, etc.* 72 Ga. 850, 856.)

Perhaps it might not be amiss to quote from *Kebble Ex Parte* (*supra*, p. 605) wherein Lord Eldon, in denying the application, said in part: " I wish very well to the application, if I can find a principle, upon which it can rest."

The difficulty here is that we can find no sound principle upon which the present application can rest, and consequently we are constrained to the view that the judgment entered at Special Term must be reversed, with costs, and the complaint dismissed, with costs to the appellant payable out of the fund.

Cohn and Callahan, JJ., concur; Martin, P. J., concurs in result.

Judgment unanimously reversed, with costs, and complaint dismissed, with costs to the appellant payable out of the fund. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.