HARDEMAN & SPARKS, plaintiffs in error, *vs.* J. E. DE-VAUGHN, defendant in error.

1. When a commission merchant and factor advanced money to a planter to purchase supplies, the planter agreeing, in writing, to deliver to the factor, at his own house, in Macon, enough of the crop upon which the money was thus advanced to pay for the said advance, and the planter accordingly did deliver at the depot of the Southwestern Railroad at Montezuma, such cotton, consigned to the factor, at Macon, and after such delivery the cotton was seized to satisfy a lien under the Act of 1866, given to a third person and prior to the factor's advance, but not foreclosed until after the delivery of the cotton at the depot, so consigned to the factor :

*Held*, That the delivery at the depot of the cotton consigned to the factor, was, for the purpose of the lien, a delivery to the factor, and his special property thereupon attached, even against other liens under the Act of 1866, given prior to the factor's advance, if the factor had no notice of said liens prior to his advance, and there was no foreclosure of the prior lien before the delivery at the depot, as described.

2. If an issue be made upon a lien foreclosed under the steamboat lien law by affidavit, or if there be a claim to the property, the papers are to be returned and the issue tried in the county of the residence of the defendant.

Hardeman & Sparks *vs.* DeVaughn.

Factor's lien. Delivery. Steamboat lien. Venue. Before Judge CLARK. Macon Superior Court. May Term, 1873.

J. E. DeVaughn levied an execution, based on a factor's lien for supplies furnished to R. D. Brown, with which to make a crop for 1872, dated on the 17th of February of that year, amounting to $180 00, and $20 00 for counsel fees, on three bales of cotton. The cotton was claimed by Hardeman & Sparks.

The plaintiff introduced in evidence the proceedings upon which his execution was based, the execution and the levy. He testified that the cotton when levied on, was on the platform of the depot of the Southwestern Railroad, at Montezuma; that Brown, the defendant in *fi. fa.*, then told him that the cotton belonged to him, was raised on his place, and was brought to the depot on his wagon.

Claimants introduced the deposition of Brown to the following effect:

Witness executed the following instrument:

"$500 00.                           *March 5th*, 1872.

"To HARDEMAN & SPARKS:—Eight months after date, please pay to the order of myself $500 00, for value received, as an advance on my growing crop of cotton for the year 1872, for provisons and commercial manures furnished to enable me to make said crop. In order to secure said advance I hereby give you a lien on my said growing crop of cotton as well as on my growing crop of corn, and I agree to deliver to you at your warehouse, enough of said cotton crop to pay this draft at maturity. In order further to secure said advance and the payment of all costs and counsel fees, of ten per cent. incurred in the premises, I hereby mortgage to you and your assigns my stock of all kinds on the plantation cultivated by me in Houston county, to-wit: four mules. And I hereby give you full and legal control of said crop and of said mortgaged stock, waiving all right of homestead exemption therein, with power to transfer this lien. And if not paid at maturity to

bear interest at the rate of ten per cent. per annum from date hereof.

"Witness my hand and seal.

(Signed)     R. D. BROWN. [L. S.]

"Executed in presence of

"(Signed)     GEORGE W. KILLEN.

"Accepted.     (Signed)     HARDEMAN & SPARKS.

"Indorsed. .     (Signed)     R. D. BROWN."

The consideration of said instrument was advances in supplies made by claimants to enable witness to make a crop for the year 1872. The cotton, at the time of the levy, was in the possession of the Southwestern Railroad Company, to be delivered to claimants to satisfy their claim for supplies, etc. Claimants are factors and commission merchants. The cotton was not levied on before any shipping order was given by witness to the railroad company.

The claimants introduced the above instrument executed by Brown in their favor.

Thomas H. Marshall testified for the claimants substantially as follows: The cotton, at the time of the levy, was in the possession of the Southwestern Railroad Company, having been delivered to it to be shipped to claimants. At the time the cotton was delivered to the railroad company by Brown, he gave a shipping order for it to be shipped to claimants. The shipping order was delivered several hours before the levy. Witness was the cotton-shipping clerk of the railroad company. Does not remember whether he gave to Brown a planter's receipt or not. The original and duplicate receipts follow and control the cotton; the planter's receipt is a mere memorandum for the shipper, but exercises no control over the cotton. Witness shipped the cotton in obedience to the shipper's order. This was after the levy and claim.

The jury found the property subject.

The claimants moved for a new trial upon the following grounds, to-wit: .

Hardeman & Sparks *vs.* DeVaughn.

1st. Because the verdict was contrary to the law and the evidence.

2d. Because the Court erred in refusing to allow plaintiff to testify, that the defendant, Brown, at the time of taking out process, to enforce the lien upon which said execution issued, was a resident of the county of Houston and not of the county of Macon, and in rejecting the evidence of Brown to the same effect.

3d. Because the Court erred in refusing to charge as follows: " That the delivery of cotton by a debtor to a common carrier to be transported by such common carrier to a factor who has made advances to such debtor, is a delivery to the factor, and vests in him the title to the property, subject to an account between him and his debtor."

4th. Because the Court erred in refusing to charge as follows : " That the purchaser of property under one of these crop liens, who has no notice of such lien, takes the title discharged of the same, and this is true, whether he purchases an absolute or qualified title."

5th. Because the Court erred in charging the jury as follows : " This is a contest between parties holding crop liens under the Act of 1866, and the older lien would prevail over the younger, although the party holding the younger lien should obtain possession of the property, and although he had no notice of said prior lien at the time the property came into his possession."

A new trial was refused, and claimants excepted.

F. T. SNEAD; POE & HALL, by brief, for plaintiffs in error.

W. A. HAWKINS, for defendant.

McCAY, Judge.

1. The claimants were proven to be factors and commission merchants. As such, they have a lien, wholly independent of the Act of 1866, on the property of a planter to whom they have made advances, as soon as, and as long as they have *pos-*

*session* of the property. This is true, at least, as against all liens of which they have no notice, either actual or constructive. If, therefore, Hardeman & Sparks did advance to Brown, under a written agreement by Brown that he would deliver to them cotton sufficient to pay the advance, it would follow that, as soon as Hardeman & Sparks got possession, their rights attached. They had a special property in the cotton, against Brown or any purchaser from him, after their possession, or against any lien or judgment, the lien of which did not begin until after their possession. And this was wholly independent of the Act of 1866, and wholly independent of the nature of the advances—that is, whether they were for provisions or not. Was the delivery of the cotton at the depot of the Southwestern Railroad, consigned to Hardeman & Sparks, such a delivery to Hardeman & Sparks as brings the case within the rule we have stated? Did Hardeman & Sparks, by such delivery, get such a possession as made their lien good, as a factor's lien, so as to authorize them to put in this claim on their special property, and so as to prefer them to Vaughn? In the case of *Kollock et al. vs. Jackson*, 5 *Georgia*, 155, this Court held that the delivery to the factor might be *constructive*, and need not be actual. In *Wade & Company vs. Hamilton*, 30 *Georgia*, 450, the precise point here made was decided, to-wit: that a delivery to a carrier, in pursuance of an agreement to deliver to the factor, was, if the goods were consigned to the factor, such a constructive delivery to the factor as made his lien attach. And at the last term of this Court, in the case of *Elliott vs. Cox et al.*, we decided the same thing. We are of opinion, therefore, that the Court erred in refusing to charge, as requested by claimant's attorney, that if the cotton was delivered to the Southwestern Railroad, consigned to Hardeman & Sparks, before the plaintiffs' lien was foreclosed, Hardeman & Sparks should recover.

2. We think, too, after much deliberation, that the residence of the defendant is the proper county to try any issues that may be found on these liens. The Constitution provides that all suits shall be had in the county where the defendant

Hardeman & Sparks *vs.* DeVaughn.

lives. The steamboat lien law under which all these liens are, under the Act of 1866, to be foreclosed, does not, in terms, say what county the issue should be tried in. It simply says they shall be returned to the Court and tried as in other cases. We have held that the proceedings under the steamboat law are [not proceedings in *rem*, but personal proceedings against the owner, or agent, or lessee of the boat, carrying a lien on the boat with them. Any other construction of the Act would make it an infringement on the maritime jurisdiction of the Federal Courts. If this be so, we do not well see how it can be otherwise than necessary to return any issue that may arise to the Court having jurisdiction in the county of the defendant's residence. We are aware that this is a new view of this law, but the point is now distinctly made and we cannot but decide it as we think the Constitution requires. We see no objection to making the affidavit and getting an authority to sell, *ex parte*, in any county, but if the defendant makes an issue, then the proceedings are only a mode of bringing a suit against him personally, charging his property as the basis. Our laws have now become so general that unless the Constitution be adhered to, a very large number of the suits against persons will be triable in some other county than their residence. It may be that this view will require new legislation, as it may be difficult to give effect to this rule in some cases under the law as it stands. But we cannot help this. The law is an awkward one any how. The enforcement of a lien on a steamboat, a rambling, changing and peculiar thing, is a poor model at best for liens on other things, and we have always thought it unfortunate that the other liens created by statute have so uniformly been made enforceable by mere reference to this steamboat law.

Judgment reversed.