## LAMAR v. McLAREN et al.

## LAMAR, executor, et al. v. McLAREN et al.

1. The 'rule being that, unless the contrary manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law and not to change it, the declaration in section 4013 of the Civil Code, that the rule of election does not apply "if the testator has an interest in such property upon which the will may operate," should not be regarded as inconsistent with the prior law on this subject, but as declaratory thereof. The operation here referred to means full operation according to the whole intention of the testator, and not a partial or limited operation which would execute this intention in part and leave it in part unexecuted.

2. Inasmuch as several of the provisions of the will now under consideration in favor of specific legatees could not possibly have operation according to the testator's manifest intention, were the adverse claim of one of the legatees to some of the property therein disposed of established, the present case falls within the principle of election, and consequently the rule of election is applicable to it.

3. The trial court rightly adjudged that this was a case for election, but the plaintiff in error should not have been called upon to make an election until after an adjudication in this case of the question whether or not he is in fact the owner of some of the property disposed of by the will, and then only in the event this issue is determined in his favor. The judgment of the court below is, by an appropriate direction modified accordingly.

4. When in making a distribution of his estate a testator, in one item of his will provides for the son of a deceased daughter in substantially the same manner as he does for his own children, and when it is perfectly clear from other language used in the will that the grandson's interest in the estate is to be limited to the provision made for him in such item, the words, "Wherever the word 'children' is used in this will, it is my will and desire that it shall be taken and construed to include descendants of children, such descendants to have and take the share and parts of their deceased parents," appearing elsewhere in the will, do not apply to and embrace the grandson.

*Argued February 15, 16,—Decided August 2, 1899.*

Petition for direction. Before Judge Felton. Bibb superior court. May 9, 1898.

Henry J. Lamar and Walter D. Lamar as executors of the will of Henry J. Lamar, deceased, filed an equitable petition, asking the direction of the court as to several matters in reference to the administration of their testator's estate. The petition alleged that the testator died December 25, 1896, leaving a large estate of realty and personalty. The seventh paragraph

of the petition was as follows: "Your petitioners further show that, by the fifth item of said will, the said testator directs that the business known as H. J. Lamar & Sons' drug-store, and the Vineville drug-store, and the Lamar & Cheatham drug-store, be by his said executors continued in operation for and during the term of five years after his death, and the profits arising therefrom annually divided amongst his legatees entitled thereto, in proportion as each legatee may have an interest in such business respectively, and the Ingalls drug business, which is given to H. J. Lamar Washington by the first item of said will, to be managed by said trustee. Your petitioners are advised, and so charge, that H. J. Lamar claims that he was during the lifetime of the testator and is now a partner in said businesses and all of them, his partnership interest therein being five sixteenths, and that by reason of such claim of ownership he is entitled to five sixteenths of each of said properties, and that by reason thereof he is further entitled to a five-sixteenths interest in the Lamar & Rankin Drug Co., [and] the Albany Drug Co. Your petitioners show that they can not settle and determine this question of ownership, and are at a loss to proceed in the administration of said will in this regard; the said Henry J. Lamar being a legatee under said will, and by the terms thereof being entitled to a one-sixth interest therein as legatee. Your petitioners are advised that upon this claim of the said Henry J. Lamar the question necessarily arises whether the said Henry J. Lamar shall be put to his election to choose either under said will or against said will, or whether the fact of said alleged ownership by him and claim by him constitute a case for election under said will. Your petitioners therefore pray that the court will direct them as to whether or not, under the facts alleged in this paragraph, the said Henry J. Lamar shall be put to his election." Paragraph 8 was as follows: "Your petitioners further show, that by the seventh item of said will the said testator declares that wherever the word 'children' is used in said will, it is his will and desire that it shall be taken and construed to include the descendants of children, such descendants to take the share or part of their deceased parent. Your petitioners further show that in the

sixth item of said will the testator directs that should any of the property therein bequeathed revert to his estate, the same shall be divided equally amongst his surviving children, his grandson Henry J. Lamar Washington in no way to participate therein. Your petitioners therefore pray the judgment and decree of the court as to whether or not the said Henry J. Lamar Washington is included in said will as coming within the meaning of the phrase, 'descendants of children,' set forth in the seventh item of said will."

The petition was amended as follows: "Petitioners showeth that Henry J. Lamar Jr. claims to have been the owner of a one-fourth interest in what was known as the Lamar, Rankin & Lamar drug business in the city of Macon, and that out of said business grew the several drug businesses in the city of Macon, to wit, the drug business known as H. J. Lamar & Sons' drug-store and the Vineville drug-store, the Lamar & Cheatham drug-store, and the drug business conducted by Dr. Ingalls at the corner of Fourth and Poplar streets in the City of Macon, and what is known as the Bruner drug-store. Also there grew out of said drug business the following corporations: Lamar & Rankin Drug Company, of Atlanta, Ga., [and] the Albany Drug Company, of Albany, Ga." The amendment further alleged that "There are one thousand shares of the Lamar & Rankin Drug Company. Of this amount there stood on the books in the name of H. J. Lamar, five hundred and five shares; H. J. Lamar & Sons, one hundred and eighty-five shares; to other persons three hundred and ten shares. On Dec. 11th, 1896, just prior to making his will, there stood on the books of the Lamar & Rankin Drug Company in the name of H. J. Lamar Sr., one hundred and thirty shares; that on the 11th day of Dec., 1896, the said Henry J. Lamar Sr. directed and had transferred to his name, of the stock that stood on the books in the name of H. J. Lamar & Sons, three hundred and seventy-five shares; . . thus making a total of five hundred and five shares which stood in his name on the books of said company at his death. To legatees by names the said H. J. Lamar Sr. bequeathed five hundred and fifty-five shares of stock in the Lamar & Rankin Drug Company. . . There stood in the name of Henry J. Lamar Sr.,

38

at the date of his death, on the books of the Albany Drug Company, thirteen shares of stock, and in the name of Lamar & Sons two hundred and fifty-two shares of stock; and the said Henry J. Lamar bequeathed one hundred and twenty-five shares of stock in the said Albany Drug Company to legatees by names." By another amendment the petition alleged that "The interest claimed by the said H. J. Lamar as a partner in the business referred to in the seventh item of the original bill is a claim of one third in the business of H. J. Lamar & Sons, and a claim of one third of the stock belonging to H. J. Lamar & Sons in the Lamar & Rankin Drug Company, and in the Albany Drug Company." The parties defendant were Mrs. Valeria McLaren, Mrs. Fannie Rankin in her own right and as trustee for her children; Eli S. Shorter as trustee for his wife, Wylena Shorter, and their children, and J. T. Lamar and his wife, Julia Lamar, and their children.

A copy of the testator's will was attached to the petition. So much of it as is material to the consideration of the questions made by the record is as follows:

"Item 1. I devise and bequeath to my son Henry J. Lamar Jr., in trust for my grandson Henry J. Lamar Washington, the . . storehouse in the city of Macon . . now occupied by Dr. John Ingalls, . . also the fixtures and stock of drugs therein, . . also eighty shares of Lamar & Rankin Drug Company stock, . . also twenty-five shares of Albany Drug Company stock. . . The trustee herein named for my said grandson and his successors is hereby vested with full power and authority to continue my drug business now conducted by Dr. John Ingalls, . . so long after my death as the same may be profitable to my grandson, and it is my wish and desire that the said Dr. John Ingalls shall manage and conduct the same, so long as he shall be able and willing to do so, on the same terms and conditions as he is now conducting the same for me. . . The bequest of the Lamar & Rankin Drug Company stock . . herein made is subject to the restrictions hereinafter imposed by a subsequent item of this my will.

"Item 2. I will and direct that all the residue of my estate

. . shall be divided into six equal shares or parts, and shall be disposed of as follows: . . (A) To my son Walter D. Lamar, one-sixth equal share, which I direct shall consist in part of eighty shares of Lamar & Rankin Drug Company stock, . . also twenty shares of Albany Drug Company stock. . . (B) To my son Henry J. Lamar Jr., in trust for my daughter Valeria McLaren, I give one other sixth part of my estate consisting in part of . . seventy-five shares of Lamar & Rankin Drug Company stock, . . also twenty-five shares of Albany Drug Company stock. . . (C) I give to my daughter Mrs. Fannie L. Rankin, in trust for herself and children, one other sixth part of my estate, consisting in part of . . eighty shares of Lamar & Rankin Drug Company stock, twenty-five shares of Albany Drug Company stock. . . (D) I give and bequeath to my son-in-law Eli S. Shorter one other sixth part of my estate, to be held by him in trust for my daughter Wylena Shorter, . . said one-sixth part consisting of . . eighty shares of Lamar & Rankin Drug Company stock. . . (E) As a part of one other one-sixth share of my estate I give and bequeath to my son Walter D. Lamar . . forty shares of Lamar & Rankin Drug Company stock . . in trust for my son J. T. Lamar. . . The remaining part of this one-sixth of my estate . . I give and bequeath to my son Henry J. Lamar Jr., in trust to hold and manage for the benefit of such children as my son J. T. Lamar now has or may hereafter have born to him, . . a portion of such remaining part consisting of forty shares of Lamar & Rankin Drug Company stock." In each of the foregoing instances the bequest of stock in the Lamar & Rankin Drug Company was made subject to the restrictions imposed in the fourth item of the will.

"Item 3. I give and bequeath to my son, Henry J. Lamar Jr., one other sixth of my estate, consisting in part of . . eighty shares of Lamar & Rankin Drug Company stock . . and twenty-five shares of Albany Drug Company stock . . to have and to hold the same in his own right, for himself and his heirs forever.

"Item 4. I desire and direct that all the shares or stock . of

the Lamar & Rankin Drug Company stock, . . herein de-
vised under the preceding items and paragraphs of this my
will, shall be held by my executors hereinafter named, until
the first day of January in the year of our Lord nineteen hun-
dred and twenty-five (1925), at which time, and not until then,
I direct that such stock be distributed amongst the legatees
mentioned in items 'one' and 'three' and paragraphs (A), (B),
(C), (D), and (E) of item 'two', as in each of said items and
paragraphs directed; the dividends arising from all of said
stocks up to the first day of January, 1925, to be divided in
the following manner to wit: the dividends and profits arising
from said Lamar & Rankin Drug Company stock shall be dis-
tributed to each of said legatees annually, and within eight
months after they are declared by said company, in the pro-
portion as said stock is herein bequeathed to each legatee in
said items and paragraphs of this my will and testament. . .

"Item 5.    I desire and direct that my drug business, known
as H. J. Lamar & Sons drug-store, Lamar & Cheatham drug-
store, and the Vineville drug-store, be, by my executors here-
inafter named, continued in operation for and during the term
of five years after my death, and the profits arising therefrom
annually divided amongst my legatees entitled thereto, in the
proportion as each legatee may have an interest in such busi-
ness respectively.

"Item 6.    I direct that should any of the property herein
bequeathed revert to my estate, the same shall be divided
equally amongst my surviving children, . . my grandson
Henry J. Lamar Washington in no way to participate therein.

"Item 7.    Wherever the word 'children' is used in this
will, it is my will and desire that it shall be taken and con-
strued to include descendants of children, such descendants to
have and take the share and parts of their deceased parents.

"Item 12.    I hereby constitute and appoint my sons, Henry
J. Lamar Jr., and Walter D. Lamar, . . executors of this
my last will and testament.    I direct that all my real and
personal estate be sold or divided in kind by my executors, ex-
cept such as is herein specially bequeathed to my children and
grandchild, not sooner than two years nor longer than five

years after my death. . . The specific property herein specially bequeathed to my children, except the stocks in the Lamar & Rankin Drug Company, . . I direct shall be turned over to them or their trustees as soon as practicable after my death."

Henry J. Lamar in his individual capacity answered the petition filed by himself and Walter D. Lamar as executors, and, after expressing a desire that the court do give explicit directions on all the matters referred to in said petition, and upon any and all such other questions as may arise in the pleadings in said cause, specifically set up that he as a partner owned, at the time of the death of Henry J. Lamar Sr., an interest in the business conducted under the name of H. J. Lamar & Sons, including the H. J. Lamar & Sons drug-store, the Lamar & Cheatham drug-store, the John Ingalls drug-store, and the Bruner drug-store, and in the shares of stock owned by H. J. Lamar & Sons in the Lamar & Rankin Drug Co. and the Albany Drug Co. His answer further alleged, "that under the terms and provisions of said will, and according to the intention thereof, no question of election arises on account of his membership in said firm and his ownership of said interest in its assets. That in his said will his father did not affect to dispose of the property of him the said Henry J. Lamar, or the property of any other person whatsoever, except the property of him the said testator. That the said testator himself had a large and controlling interest in all the assets of the said Henry J. Lamar & Sons, . . and was the senior and leading partner of said firm, and that under the terms and provisions of said will the said will has operated, and can only operate, upon his said interest." Upon the trial Henry J. Lamar requested the court to be allowed to submit evidence to the jury in proof of his partnership interest. The defendant legatees in their answers joined in the prayers of the petition for direction, so far as such prayers affected their interests as legatees under the will; and Mrs. Rankin, one of the defendants, for herself and as trustee for her children, in answering the pleading made on the part of Henry J. Lamar for himself "individually and personally," alleged

that he did not, at the time of the death of the testator or the date of the answer, own any interest in the several properties mentioned in the will, except as legatee thereunder, but that said properties belonged exclusively to the testator, and "that upon a full accounting between the said testator and said Henry J. Lamar in respect to the rights and liabilities of the respective parties as to any partnership relation which may have existed in which they were concerned together, there is not now, and was not at the date of the filing of his said pleading, due to him any sum whatever from said testator or from said partnership or from any interest in any of the assets thereof, and that therefore he has now no interest in the said properties; and this defendant prays that such an accounting be had." The court upon the trial declined to permit Henry J. Lamar to submit evidence to the jury to establish his interest as a partner in the business of H. J. Lamar & Sons, and decreed that he be put to his election, whether he would claim under the will as a legatee or against the will as a partner. It was further decreed that Henry J. Lamar Washington was not included within the word "children," set forth in the seventh item of the will, and that beyond the legacies devised to him in the first item of the will he was not interested as a legatee. Henry J. Lamar, for himself individually and as trustee for Henry J. Lamar Washington, excepted, and the two bills of exceptions were considered here together.

*Anderson, Anderson & Grace, Guerry & Hall, Hoke Smith & H. C. Peeples,* and *N. J. & T. A. Hammond,* for plaintiff in error in first bill of exceptions.

*Hill, Harris & Birch,* for plaintiffs in error in second bill.

*Dessau, Bartlett & Ellis, Hall & Hardeman, John L. Hopkins & Sons, Steed & Wimberly, Hardeman, Davis & Turner, Hill, Harris & Birch* and *G. L. Comer,* for other parties.

FISH, J.    1. Section 4013 of the Civil Code declares that, "When a testator has affected to give property not his own, and has given a benefit to a person to whom that property belongs, the devisee or legatee must elect either to take under or against the instrument.    The rule does not apply if the  .  .  testator

has an interest in such property upon which the will may operate," etc. Counsel for plaintiffs in error contended that the declaration that the rule of election does not apply, "if the testator has an interest in such property upon which the will may operate," "was intended to be [an] absolute [rule] so as to preclude uncertain and troublesome speculation as to intention, and to prevent cases of election when a testator might apparently dispose of an entire property when he had only an interest in it; and under the law of Georgia, as it now exists, a testator, in order to raise a case of election, when he has an interest in the property, would be obliged to expressly and distinctly affect to dispose of the other interest." Such a construction of this declaration of the code would be to change the law as it existed prior to the code in reference to the application of the doctrine of election to cases of constructive or implied election, where the testator and the devisee upon whom a benefit is bestowed, and against whom an election is sought to be enforced, have each an individual share or a partial and limited interest in the property intended to be given to another by the testator. In our judgment no change in the existing law upon the subject was contemplated by the language of the code under consideration, and the interpretation given it by the learned counsel for plaintiffs in error is, we think, unsound. The rule is that, unless the contrary manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law and not to change it. See *Shumate* v. *Williams*, 34 *Ga.* 249; *Mechanics' Bank* v. *Heard*, 37 *Ga.* 412; *Phillips* v. *Solomon*, 42 *Ga.* 195; *Gardner* v. *Moore*, 51 *Ga.* 269; *City of Atlanta* v. *Gate City Gas Light Co.*, 71 *Ga.* 119; *Baird* v. *Brookin*, 86 *Ga.* 714; *Gillis* v. *Gillis*, 96 *Ga.* 10; *Central Ry. Co.* v. *State*, 104 *Ga.* 841. Especially is this true where a broad principle of equity is the subject-matter dealt with, such as the principle underlying the rule which requires a legatee not to disappoint another legatee, either in whole or in part, by an adverse claim, unless he renounces, in whole or in part, according to circumstances, the legacy bequeathed to himself. The operation, in the expression "upon which the will may operate," means full operation according

to the whole intention of the testator, and not a partial or limited operation which would execute this intention in part and leave it in part unexecuted. The very essence of a will is the testator's intention. Where its effect falls short of his intention, the will is, to that extent, inoperative. If the testator has such an interest in the property disposed of as that his testamentary intention concerning it can be fully carried into effect without encroaching on the alleged right of an adverse claimant to whom the will gives a benefit, the *principle* of election has no application, and consequently the *rule* of election does not apply ; for in such a case the testator would not intend to dispose of property not his own, and it is one of the essentials of the application of the doctrine of election that the testator must affect to dispose of property belonging to his donee. If, on the other hand, the testator has an interest in the property disposed of, but his testamentary intention, as it clearly and manifestly appears from the will itself, can not fully operate upon such interest alone, but, to be wholly effective, must encroach upon the right of the owner of the other interest in the property, who is given a benefit under the will, then the principle of election will apply. This was the law prior to the code, and the code does not change it.

In *McGinnis* v. *McGinnis*, 1 *Ga.* 503, Judge Lumpkin said, " To put the legatee to his election, it is only necessary that the instrument should clearly ascertain the property given ; *that it was manifestly the intention of the testator to dispose of the property which is not his own; and that the gifts are in such terms as are inconsistent with the notion, that the donee can keep his own estate, and also take under the will, without defeating the intention of the testator,*" citing Wilson v. Arny, 1 Dev. & Bat. 378. The learned judge in the same opinion further said : "It is true that the doctrine of election has been held not applicable to cases where the testator has some present interest in the estate disposed of by him, although it is not entirely his own. In such a case, *unless there is an intention clearly manifested in the will to dispose of the whole estate, including the interests of third persons,* he will be presumed to intend to dispose of what he might lawfully dispose of, and of no more." Citing

2 Story Eq. Jur. 352, now § 1089, 13th ed. In 2 Jarman on Wills (5th ed.), 20–21, it is said that the most numerous, as well as the most difficult class of cases with which the courts have had to deal, consists of those in which the testator and the person against whom the election is sought to be raised have each an undivided share, or some partial or limited interest, in the property, and the question is whether the testator intended the devise to comprise such property, inclusive of the interest of his co-owner; and this author says: "*Prima facie* the testator must of course be understood to refer only to what he had power to dispose of. But the context of the will must be examined, to see whether an intention to include also what he had no such power to dispose of be indicated; and for this purpose, notwithstanding some strong expressions tending to show the difficulty of applying the doctrine of election to such cases, the ordinary rules for collecting the testator's intention must be observed, the question being simply what does the testator mean?" In 1 Pomeroy's Equity Jurisprudence, § 489, the rule is stated as follows: "If a testator owning an undivided share uses language of description and donation which may apply to and include the whole property, and by the same will gives benefits to his co-owner, the question arises whether such co-owner is bound to elect between the benefits conferred by the will and his own share of the property. *Prima facie* a testator is presumed to have intended to bequeath that alone which he owned,—that only over which his power of disposal extended. Whenever, therefore, the testator does not give the whole property *specifically*, but employs *general words* of description and donation, such as 'all my lands' and the like, it is well settled that no case for election arises, *because there is an interest belonging to the testator to which the disposing language can apply, and the prima facie presumption as to his intent will control.* [Italics ours.] On the other hand, if the testator devises the property *specifically* by language indicating a specific gift of the property, an election becomes necessary. It seems now to be settled by the more recent English decisions that when the owner of an undivided share devises or bequeaths the property by words of description and donation importing

an intent to give the *entirety*, then a case of election is raised against the co-owner who receives a benefit under the same will. The conclusion which is plainly deducible from these recent decisions in England is, that when a person owns an undivided interest or share in any species of property, — a house and lot, a farm, a fund of securities, or a fund of money, — and he does not use general words of gift, such as, 'all my estate,' 'all my property,' and the like, but purports to give the *whole thing itself*, using language which by a reasonable interpretation must necessarily describe and define the whole *corpus* of the thing in which his partial interest exists, as a distinct and identified piece of property, then an intention to bestow the whole, and not merely the testator's undivided share, must be inferred, and a case for election arises. The language of description may be by metes and bounds, or may be any other form of words which will serve clearly to point out and identify the entire subject-matter." To same effect, see 2 Beach, Eq. Jur. § 1074; Tiedeman, Eq. Jur. § 127; 11 Am. & Eng. Enc. L. (2d ed.) 75–76; 2 Story's Eq. Jur. §§ 1086– 1096. The rule laid down in the books referred to is supported by a great number of adjudications by the courts of this country as well as those of England—many of them made before the adoption of our code. It was recognized in this State prior to the code, as we have seen, in *McGinnis* v. *McGinnis*, supra, and is entirely consistent with the declaration of the code upon this subject.

2. The manifest intention of the testator, Henry J. Lamar, as appears from his will, was to give to his legatees all the interest, right and property that his son Henry J. Lamar, himself a beneficiary under the will, now claims as his in the business known as H. J. Lamar & Sons. By the terms of donation and description the property in which the son, Henry J. Lamar, claims to have an interest is specifically disposed of in its entirety. By the first item of the will the drug business conducted by Dr. John Ingalls, which was admittedly a part of the business of H. J. Lamar & Sons, was in its entirety specifically given to Henry J. Lamar Jr., as trustee for Henry J. Lamar Washington, the testator's grandson. The language

used, viz., "I devise and bequeath to my son Henry J. Lamar Jr., in trust for my grandson Henry J. Lamar Washington, the three-story brick storehouse and lot on which it is situated on the corner of Fourth and Poplar streets, in the city of Macon, now occupied by Dr. Ingalls, . . also, the fixtures and stock of drugs therein, which I value at six thousand and five hundred dollars. . . The trustee herein named for my said grandson and his successors is hereby vested with full power and authority to continue my drug business now conducted by Dr. John Ingalls on the corner of Poplar and Fourth streets, so long after my death as the same may be profitable to my said grandson, and it is my wish and desire that the said Dr. John Ingalls shall manage and conduct the same, so long as he shall be able and willing to do so, on the same terms and conditions as he is now conducting the same for me," manifestly shows that the testator treated the entire drug business conducted by Dr. John Ingalls as belonging to the testator exclusively, and clearly manifested his intention to give the whole of it, including any interest claimed by Henry J. Lamar Jr., to Henry J. Lamar Washington. By the fifth item of the will the testator directed, "that my drug business known as H. J. Lamar & Sons drug-store, Lamar & Cheatham drug-store, and the Vineville drug-store, be, by my executors hereinafter named, continued in operation for and during the term of five years after my death, and the profits arising therefrom annually divided amongst my legatees entitled thereto, in the proportion as each legatee may have an interest in such business respectively." By other items certain shares of stock in the Lamar & Rankin Drug Company, and in the Albany Drug Company, in excess of such stock standing in the testator's own name, were bequeathed to the legatees, and in item 4 the testator directed that "all the shares or stock of the Lamar & Rankin Drug Company stock, . . herein devised under the preceding items and paragraphs of this my will, shall be held by my executors hereinafter named until the first day of January, . . 1925, at which time, and not until then, I direct that such stock be distributed amongst the legatees mentioned in items 'one' and 'three', and paragraphs (A), (B), (C), (D), and (E) of item

'two', as in each of said items and paragraphs directed; the dividends arising from all of said stocks up to the first of January, 1925, to be divided in the following manner, to wit: the dividends arising from said Lamar & Rankin Drug Company stock shall be distributed to each of said legatees annually, and within eight months after they are declared by said company, in the proportion as said stock is herein bequeathed to each legatee in said items," etc. Here the testator plainly ignored all rights and interests which are now claimed by Henry J. Lamar Jr., as a surviving partner in the business of H. J. Lamar & Sons, and in the stock of the Lamar & Rankin Drug Company and the Albany Drug Company belonging to such business, and again clearly evidenced his intention to make a testamentary disposition of the business of H. J. Lamar & Sons in its entirety. The manifest intention of the testator, as to the property specifically disposed of in the above-quoted items of the will, could not possibly have operation, if the adverse claim of a partnership interest, which Henry J. Lamar Jr. asserts in such property, were established. The positions of surviving partner and legatee would be inconsistent; he could not occupy both, but would be put to his election as to whether he would take under the will as legatee, or against it as surviving partner.

3. The contention of the other legatees was, that Henry J. Lamar Jr. had no interest in the business of H. J. Lamar & Sons. He contended that, as a partner, he owned a one-third interest therein, and requested the court to allow him to submit evidence to the jury in proof of his claim, which request was denied. Until this issue had been passed upon and it had been adjudicated that he in fact had an interest in such business, he should not have been called upon to make an election. Unless he owned an interest in the property which the testator affected to dispose of, the principle of election did not apply. For, in order to put the donee of a benefit under a will to an election, two things are essential: first, the testator must give property of his own; second, *he must profess to dispose of property belonging to his donee.* 11 Am. & Eng. Enc. L. 65. According to section 4012 of the Civil Code, to raise a case of

election a person must be *entitled* to one of two benefits, to each of which he has *legal title*, but to enforce both would be unconscientious and inequitable to others having claims upon the same property or fund. He must have legal title to both benefits and have the right to enforce either at his election. Again, the doctrine of compensation is recognized in section 4015 of the Civil Code. Now, if Henry J. Lamar Jr. were required to elect between his legacy under the will and his *mere claim* to an interest in the, business of H. J. Lamar & Sons, that is between his legacy and a lawsuit, and he should elect to take his claim, or the court should force him so to elect, and he should, upon a subsequent trial for the enforcement of his claimed partnership interest, fail, for any reason, to establish the same, then there would be no one to compensate, as in such event there would be no defeated or disappointed legatees, but, on the contrary, the other legatees would get the very property he claimed. Inasmuch, therefore, if Henry J. Lamar Jr. does not in fact own an interest in the business of H. J. Lamar & Sons, as one of the essentials of an election is wanting and the rule is inapplicable, we direct that he be not called upon to make an election until after there has been in this case an adjudication of the question whether or not he is in fact the owner of an interest in the property of the business of H. J. Lamar & Sons, disposed of by the will, and then only in the event this issue is determined in his favor.

4. By the 6th item of the will, the testator directed that should any of the property therein bequeathed revert to his estate, the same should be divided amongst his surviving children, and further provided: "my grandson Henry J. Lamar Washington in no way to participate therein." The 7th item was as follows: "Wherever the word 'children' is used in this will, it is my will and desire that it shall be taken and construed to include descendants of children, such descendants to have and to take the share and parts of their deceased parents." In the first item of his will the testator made a very munificent provision for his grandson Henry J. Lamar Washington, and then in the second item directed that "All the residue of my estate, of whatever the same may consist and

wherever the same may be situated, shall be divided into six equal shares or parts and shall be disposed of as follows." Then he proceeds, in subsequent items, to give to each of his six children one of such shares. In view of the language of these items, and the fact that in the sixth item he expressly excludes this grandson from any participation in the property that may revert to the testator's estate, we think it manifest that the provision in the seventh item, that "Wherever the word 'children' is used in this my will, . . . it shall be taken to include descendants of children," does not apply to and embrace such grandson.

*Judgment on main bill of exceptions affirmed, with direction; on second bill, affirmed generally.*