## 18240. HALL v. JEFFREYS-McELREATH COMPANY.

1 A person who is entitled to a lien other than a mortgage on the personal property of another may foreclose the lien in any county in which the property is situated, and the execution based upon the foreclosure affidavit may be issued in the same county.

2. Where the defendant resides in another county and pleads to the jurisdiction, and also files a counter-affidavit, if the plea to the jurisdiction be sustained the court may then transfer the case to the proper court of the county of the defendant's residence, for trial upon the issue formed by the counter-affidavit.

3. In the present case, after proceedings as indicated in the two foregoing paragraphs, the court to which the case had been transferred erred in not allowing the plaintiff to amend the affidavit of foreclosure so as to allege that property belonging to the defendant and subject to the plaintiff's lien was situated in the county in which the proceedings were originally instituted, and erred further in dismissing the case.

DECIDED DECEMBER 17, 1927.

Lien foreclosure; from Bibb superior court—Judge Malcolm D. Jones. April 20, 1927.

*C. C. Crockett, Martin, Martin & Snow,* for plaintiff.

*Jones, Jones & Johnston,* for defendant.

BELL, J. J. A. Hall foreclosed a laborer's lien in Laurens county, of which the defendant, Jeffreys-McElreath Company, was alleged to be a resident. The execution was levied on lumber at the defendant's sawmill in that county, where the plaintiff worked. The execution which was issued by the clerk of the superior court of Laurens county was made returnable, and was returned, to that court. The defendant filed a counter-affidavit, and also a plea to the jurisdiction, claiming that it resided in Bibb county and was suable in that county only. This plea being sustained by the evidence upon the trial, the court, on motion of the plaintiff, transferred the case to the superior court of Bibb county. In that court the defendant moved to dismiss the proceeding upon the ground that the execution could be issued only in the county of the defendant's residence; whereupon the plaintiff offered an amendment to the affidavit of foreclosure, alleging that at the time of the original foreclosure the defendant had property in Laurens county, consisting of the product of the plaintiff's labor and the sawmill at which he worked. The court refused to allow

Liens, 37 C. J. p. 343, n. 96.
Statutes, 36 Cyc. p. 1081, n. 55; p. 1166, n. 93; p. 1168, n. 10.
Venue, 40 Cyc. p. 128, n. 51; p. 178, n. 99.

this amendment and sustained the defendant's motion to dismiss, and the plaintiff excepted.

Counsel for the defendant concede that it was proper for the plaintiff to make the affidavit of foreclosure before any officer authorized to administer an oath, but contend that it was not proper for the affidavit to be filed with the clerk of the superior court of Laurens county, or for the execution to issue from any court other than a court of the county of the defendant's residence, which was Bibb county, notwithstanding the defendant may have owned property in Laurens county. The contention of counsel for plaintiff is that the foreclosure could be made and that the execution could be issued in any county in which the defendant had property, although the law required that the case be transferred to the county of the defendant's residence for trial upon the counter-affidavit.

In our opinion the court erred in not allowing the amendment and in dismissing the case. In *Tharpe* v. *Foster,* 52 *Ga.* 79, Tharpe foreclosed a laborer's lien against Foster and had the execution based thereon levied on cotton situated in Bibb county. The affidavit of foreclosure was made and the execution was issued in that county. The defendant filed a counter-affidavit, setting up, among other things, a want of jurisdiction in Bibb superior court, on the ground that the defendant was a resident of Morgan county. On an agreed statement of facts the trial court sustained the defense and ordered the foreclosure and execution both to be set aside. The Supreme Court said that the main question was whether the process could issue in another county than that of the defendant's residence, and proceeded to answer it as follows: "The act of March 16th, 1870, is silent on this point. We do not think there is any constitutional difficulty in the way of suing it out in another county. Section 12, article 5 of the constitution, after reciting where equity cases, cases involving titles to land, etc., shall be tried, says, all other cases shall be tried in the county where the defendant resides. With this provision in all the constitutions, it has been held that an attachment can be issued by an officer of one county and returned to the courts of another: 36 *Ga.* 597; Code, §§ 3265, 3269, 3272. The act of 1869, Code, § 4082, declares that 'any person who may have rent due, may, by himself, his agent or attorney make ap-

plication to any justice of the peace within the county where his debtor may reside, or where his property may be found, and obtain from such justice a distress warrant.' If an issue be made, it is provided that it shall be 'returned to the court having cognizance thereof.' Would not this be a court in the county of the defendant's residence? So in the case of foreclosure of mortgages on personal property. The affidavit may be made before any officer of the State authorized to administer oaths, which shall be filed in the office of the clerk of the superior court of the county where the mortgagor resides or did reside at the date of the mortgage, if not a resident of the State, and such clerk shall issue the execution. It is true in the case of a mortgage the final process is to issue in the county of the defendant's residence; for in such cases it is not the officer administering the affidavit who issues the execution. But in cases of attachments the process which is levied, and the distress warrants, by which the property may both be levied on and sold, may issue out of the county of the residence of the defendant. In this case, the laborer claimed his lien on cotton, the product of his labor, then in Bibb county, and the process was levied on the cotton. The defendant resided in Morgan county. Section 1990 of the Code says, the person prosecuting such lien, either for himself or as guardian, etc., must, by himself, agent or attorney, make affidavit before a judge of the superior court, or the ordinary of the county in which the personal property may be, or the defendant may reside, showing the lien, etc., and upon such affidavit being filed, if before a judge of the superior court or the ordinary, with the clerk of the superior court of such county, it shall be the duty of such clerk to issue an execution, etc. The affidavit in this case was made before the judge of the superior court of Bibb county, and the execution was issued by the clerk of the superior court of that county. We think the execution was properly sued out and issued under the facts of the case."

A comparison by number of the code-sections referred to in this decision with those of the other codes clearly demonstrates that the Supreme Court was referring to the Code of 1873. It is also apparent that in mentioning section 1990 the court intended to refer to section 1991. It seems there was a further clerical error, in the reference to the act of March 16, 1870. The allusion evi-

dently was to the act of September 16, 1870 (Ga. L. 1870, p. 412), for we find no such act of March 16 of that year. Neither the Code of 1873 nor the Code of 1882 was ever adopted by the legislature, and these two codes may be eliminated from the present inquiry. While, as we have stated, the Supreme Court, in the *Tharpe* case, referred to the Code of 1873, the decision was in effect a mere construction of the act of September 16, 1870, as compiled in that code. The General Assembly, by the act of December 16, 1895 (Ga. L. 1895, p. 91), provided that "affidavits to foreclose liens may be made before any officer authorized to administer oaths for general purposes, but such affidavits must still be filed with the officers now authorized to issue process upon the same, which officer, after the filing of such affidavit, shall issue process as now required by existing laws." With respect to the point now under consideration, there was no change in the law between the time of the decision in the case of *Tharpe* v. *Foster*, supra, and the adoption of the Code of 1895. But counsel for the defendant in error take the position that the law providing for the foreclosure of liens other than mortgages was materially changed by the adoption of the Code of 1895, and in support of this contention they point out that section 2816 of that code says nothing about a foreclosure in a county where the defendant has property and merely speaks of the issuance of the execution by the clerk of the superior court upon the filing of the affidavit of foreclosure with that officer. The pertinent provision of the section just mentioned was repeated without change in paragraph 4 of section 3366 of the Code of 1910 and was as follows: "Upon such affidavit being filed with the clerk, it shall be the duty of the clerk of the superior court or the justice of the peace, if in his court, to issue an execution instanter against the person owing the debt, and also against the property on which the lien is claimed, or which is subject to said lien, for the amount sworn to, and the costs, which execution, when issued, shall be levied by any sheriff of this State, or bailiff if the amount be less than one hundred dollars, on such property subject to said lien, under the same rules and regulations as other levies and sales under execution." The codes of 1895 and of 1910, unlike the other codes referred to, were adopted by the legislature, the language as to each being that it was "adopted and made of force as the code of Georgia" (Ga. L.

1895, p. 98; Ga. L. 1910, p. 48). Evidently the adoption of the Code of 1910 worked no modification of the law as expressed in the Code of 1895 with respect to the matter under consideration.

The question for determination then is, did the legislature in adopting the Code of 1895 amend the statute law as it existed at the time of the decision in the case of *Tharpe* v. *Foster,* supra, so as to abolish the rule that in a foreclosure proceeding such as this the execution may be issued in any county in which personal property belonging to the defendant and subject to the lien is situated, although the defendant may reside elsewhere. "In the codification of the laws it is almost impossible to go into all the details of the different statutes codified. Where the code sections are incomplete or ambiguous, they must be construed in connection with the original acts." *Bacon* v. *Jones,* 116 *Ga.* 136, 139 (42 S. E. 401). "The rule is that, unless the contrary manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law and not to change it." *Lamar* v. *McLaren,* 107 *Ga.* 591, 599 (34 S. E. 116).

Since, under the act of December 19, 1893 (Ga. L. 1893, p. 119), providing for the appointment of commissioners to codify the laws of Georgia, the commissioners were empowered only "to codify and arrange in systematic and condensed form" the laws of the State then in force, the presumption is that the Code (of 1895) as prepared by such commissioners and as "adopted and made of force as the code of Georgia" is merely an expression of the law as it existed previously to the codification, except where, from the language used, an intention to amend or change the existing law is manifest. Where such intention appears, it must, of course, be given effect, not because of any power of legislation vested in the codifiers, but because of the adopting statute. "Where in the process of codification of an act of the legislature, mere verbal changes occur, resulting from the transposition of words or from the reconstruction of a sentence, it will not be presumed that it was the intention of the codifiers to change the law as laid down by the General Assembly; but on the contrary, in order to bring about such changes, there must be somewhere in the legislation of the State the expression of a manifest purpose to make the change in the law." *Greenfield* v. *Farrell Heating &c. Co.,* 17 *Ga. App.*

637 (1, *c*) (87 S. E. 912).: See also, in this connection, *Mechanics Bank* v. *Heard,* 37 *Ga.* 401, 413; *Phillips* v. *Solomon,* 42 *Ga.* 192; *Gardner* v. *Moore,* 51 *Ga.* 268; *Bailey* v. *McAlpin,* 122 *Ga.* 616 (6) (50 S. E. 388); *Smith* v. *Evans,* 125 *Ga.* 109 (53 S. E. 589).

We find nothing in section 2816 of the Code of 1895, nor in anything omitted, to convince us of an intention on the part of the codifiers to do other than "arrange in systematic and condensed form" the then-existing law upon the subject of the foreclosure of liens on personalty other than mortgages; and so we are of the opinion that the law on this subject remains the same, as concerns the question under consideration, as when the Supreme Court decided the *Tharpe* case. See generally, on the question of venue in cases of this character, *Cox* v. *Felder,* 36 *Ga.* 598; *Cape Fear Boat Co.* v. *Torrent,* 46 *Ga.* 585; *Hardeman* v. *DeVaughn,* 49 *Ga.* 596 (2); *Bennett* v. *Wheatley,* 154 *Ga.* 591 (5), 605 (115 S. E. 83).

Our conclusions are strengthened by a further inquiry into the history of our law on the subject under investigation. It appears that the procedure for foreclosing liens such as the one here involved was first adopted for the foreclosure of liens on steamboats, and authorized both the making of the foreclosing affidavit and the issuance of the execution to be done in the county where the boat or craft lay, and was later made applicable to the foreclosure of any lien on personalty, meaning, of course, liens other than mortgages. Section 1986 of the Code of 1863, following closely upon other sections prescribing the method of foreclosing liens on steamboats (see § 1980 et seq.), provides: "All persons having a lien on personalty under any law in this State may enforce the same in a similar manner, by complying with the requisitions prescribed above for persons employed on steamboats, the proceedings to be in the county where the property lies." The Code of 1863 was adopted as the law of Georgia just as was the Code of 1895. So that from an early date it was the policy of the law to permit foreclosures of liens on personalty in any county where property belonging to the defendant was situated, and to authorize the issuance of the execution in that county. Compare Ga. L. 1868, p. 135; Ga. L. 1869, p. 135; Ga. L. 1870, p. 409. We think the practice is still permissible under the law.

Our statements as to the adoption of codes, other than the Code of 1910, is on the authority of *Central of Ga. Ry. Co.* v. *State of Ga.*, 104 *Ga.* 831 (5) (31 S. E. 531, 42 L. R. A. 518), in which the Supreme Court said: "The Code of 1868, known as Irwin's Code, and also the Code of 1873, were both the work of private enterprise, their compilation not having been previously authorized by any act of the legislature. The Code of 1882 was compiled in pursuance of an act of the legislature, but neither this edition nor the other two named received the sanction of an adopting act. After each of these works was completed, it was by resolution of the General Assembly submitted, the first to a committee of three, and the last two to the attorney-general of the State, and each received favorable reports. This was a completion of the work, and all the legislature afterwards did was to order a publication of a given number of volumes and make appropriation therefor. When, however, the Code of 1895 was reported by the commissioners, and was examined, approved, and favorably reported by a joint committee of both houses of the legislature, that body went a step further and passed the 'adopting act' of 1895. Instead of treating the work as it did the three preceding editions, it pursued the same course followed by the legislature when it passed the act of December 19, 1860, adopting and making of force what has ever since been known as the Code of 1863." See also *Murray* v. *State*, 112 *Ga.* 7 (6), 12 (37 S. E. 111).

It follows from what has been said that the court erred in not allowing the amendment to the affidavit of foreclosure and in dismissing the proceeding.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*