ATLANTA COACH COMPANY *et al. v.* SIMMONS, clerk.

No. 11535.   February 18, 1937.   Rehearing denied March 11, 1937.

4

*F. L. Breen* and *Louis H. Foster,* for plaintiffs.

*Bennet & Peacock,* for person at interest.

*Ralph H. Pharr, Dorsey & Shelton,* and *R. R. Arnold,* for defendant.

RUSSELL, Chief Justice. ■ Section 24-2715 is in part a codification of the act of the legislature approved September 28, 1881 (Ga. L. 1880-81, pp. 93, 94), though the act has been changed in several respects in codification. The act is quoted verbatim in the

foregoing questions. We answer the first question by stating that the last provision of section 3 of the act, as quoted, should be construed to mean that the provisions of the act requiring the clerk to record certain proceedings in civil suits shall not apply to cases dismissed and settled before the record is made, and should not be construed to mean merely that the provisions of the act relating to punishment for contempt shall not apply to cases dismissed and settled before the record is made. We have reached this conclusion by an examination of the language of the original statute considered with the principles heretofore laid down in many cases concerning verbal changes in the process of codification. The word "bill" as used in section 3 of the act of 1881 was evidently used by the author in drafting the proposed legislation, which until its enactment was properly termed a "bill to be entitled an act," etc. Upon the passage of the bill it became an act; that is, a statute, and through the metamorphosis the phrase "this bill" assumed the meaning of "this act" or "this statute." Such being the proper interpretation of the original statute, the next question is whether the substitution of the word "section" for the word "bill" in the process of codification resulted in an amendment of such statute.

The first Code adopted by the legislature after the passage of the act of 1881 was the Code of 1895. *Central of Ga. Ry. Co.* v. *State,* 104 *Ga.* 831, 835 (31 S. E. 531, 42 L. R. A. 518). This act, with others or parts of others, was embodied in that Code in a section containing in all eighteen subsections (§ 4361). This section, with its various subsections, was carried in substantially the same form into the Code of 1910, § 4892, and is now contained in the Code of 1933, § 24-2715. The Codes of 1910 and of 1933, like the Code of 1895, were adopted by the legislature. *Hall* v. *Jeffreys-McElreath Co.,* 37 *Ga. App.* 581 (140 S. E. 910); *Daniel* v. *Citizens & Southern National Bank of Atlanta,* 182 *Ga.* 384, 395 (185 S. E. 696). It is in subsection 7 of section 4361 of the Code of 1895 that the pertinent verbal change makes its appearance.

While, as stated above, this section was made to embrace all or parts of other statutes, and as a result of this mixture the meaning of the word "section" as substituted for the word "bill" is somewhat obscured, we are of the opinion that, in the circum-

6

stances, it should be given the same meaning as was imported by the original word upon the passage of the legislation. In *Clark* v. *Newsome,* 180 *Ga.* 97 (178 S. E. 386), numerous decisions relating to the effect of codification, were cited and critically analyzed, among them *Lamar* v. *McLaren,* 107 *Ga.* 591, 599 (34 S. E. 116), where it was said, that "unless the contrary manifestly appears from the words employed, the language of a Code section should be understood as intending to state the existing law, and not to change it." In *Mechanics Bank* v. *Heard,* 37 *Ga.* 401, 413, it was said of the Code of 1863 that it should be kept in mind that the codifiers had no authority to originate new matter for legislative sanction, and that it is incumbent on those who assert that they went beyond their commission to prove such contention. The presumption is that a change in the law was not intended by the legislature. *Gardner* v. *Moore,* 51 *Ga.* 268; *Gillis* v. *Gillis,* 96 *Ga.* 1, 10 (23 S. E. 107, 30 L. R. A. 143, 51 Am. St. R. 121); *Mitchell* v. *Georgia & Ala. Ry.,* 111 *Ga.* 760, 768 (36 S. E. 971, 51 L. R. A. 622). Where such a change by codification does appear, it must be given effect, not because of any power of legislation vested in the codifiers, but because of the adopting statute. As said in *Clark* v. *Newsome,* supra, "Even if the codifiers undertook to amend the law, it does not necessarily follow that the legislature intended to sanction their effort to do so. The proposed change must have been so conspicuous as to demand the inference that it was noticed by the lawmaking body before the presumption against a change may be overthrown." We can not say that such was the case in regard to the act of 1881. Manifestly the word "section" as substituted for "bill" could not apply to all of section 4361 of the Code of 1895, including its eighteen paragraphs or subsections, nor does it appropriately designate the mere paragraph or subsection in which it appears. If the latter meaning had been intended, the word "paragraph" or "subsection" would likely have been used. In any view of the matter it is left in doubt and uncertainty; and this fact alone is a conclusive reply to the proposition that a change in the law was effectuated. So we answer the first portion of the first question in the affirmative, and the latter portion in the negative.

The second question is whether the petition, construed most

strongly against the plaintiffs, was subject to demurrer on the ground that it appears from the petition that the alleged payments were voluntary, not made under any force or duress, and therefore not recoverable in this suit. This question is answered in the affirmative. The facts upon which this conclusion is based are fully stated by the Court of Appeals, and it is needless to repeat them here. The allegations made by the plaintiffs did not show any valid reason for the alleged mistake; that is, for their failure to ascertain the truth as to whether such record of the proceedings had been made or not, at the time of the alleged payments. Under the Code, § 20-1007, quoted by the Court of Appeals, the alleged payments were voluntary and were not recoverable.

■ The third question is answered in the negative. The Code declares: "If any sheriff, coroner, justice of the peace, constable, clerk of the superior court, or attorney at law shall fail, upon application, to pay to the proper person or his attorney any money he may have in his hands, which he may have collected by virtue of his office, the party entitled thereto or his attorney may serve said officer with a written demand for the same; and if not then paid, for such neglect or refusal the said officer shall be compelled to pay at the rate of 20 per cent. per annum upon the sum he has in his hands, from the date of such demand, unless good cause is shown to the contrary." § 24-206. "If any of such clerks receive any money on any suit or judgment from their courts, or otherwise, and do not faithfully account for it, they are liable to rule as sheriffs are, and they and their sureties are likewise liable on their official bonds." § 24-2722. The facts stated by the Court of Appeals in the question as propounded do not show a proper case for a joinder by numerous parties in a rule against a clerk of the superior court, it appearing that the parties had separate and distinct claims for alleged excess costs collected by the clerk in separate and distinct cases. It does not appear that there was any common fund in which all of the parties had an interest, or that the clerk had violated any duty which he owed to such parties jointly. "Distinct and separate claims of or against different persons shall not be joined in the same action. Where the damage as well as the interest is several, each party injured shall sue separately." Code, § 3-110. The case as stated by the Court of

8

Appeals falls within the rulings in *Governor* v. *Hicks,* 12 *Ga.* 189, *White* v. *North Georgia Electric Co.,* 128 *Ga.* 539, 541 (58 S. E. 33) ; *Payne* v. *West Point Grocery Co.,* 151 *Ga.* 46 (105 S. E. 608). The Court of Appeals cited *Taylor* v. *Johnson,* 17 *Ga.* 521 (6), where it was held that several plaintiffs in fi. fa., having distinct claims, may unite in a money motion against the sheriff. The money rule involved in that case was likened by the court to a creditors' bill, and the decision was apparently predicated on the theory that the plaintiffs in fi. fa. were seeking to reach a fund or subject-matter in which all of them had an interest. If, however, this is not the proper construction of the decision, we are compelled to say that the ruling was obiter so far as it might be pertinent to the question now for determination. That was a suit by the Governor, for the use of named plaintiffs in fi. fa., against a sheriff and the sureties on his bond. One count of the suit was based on a rule absolute obtained against the sheriff at a previous term of the court, commanding him to pay over money to the plaintiffs (and others), which he had not obeyed. In support of this count the plaintiffs introduced in evidence a transcript from the record, showing a rule nisi based on numerous executions in favor of different parties against different defendants, and a rule absolute based upon the preceding rule nisi. To such evidence the defendants objected on the ground that these different executions with different parties could not properly be included in one and the same rule. It will be noticed that the evidence related to a previous order nisi and final judgment of the court, offered in support of the suit then on trial. It is well settled that an objection on the ground of misjoinder of parties or of causes of action is a matter for special demurrer, and that after judgment it is cured. See *Georgia R. &c. Co.* v. *Tice,* 124 *Ga.* 459 (52 S. E. 916, 4 Ann. Cas. 200) ; *Morgan* v. *Morgan,* 157 *Ga.* 907 (123 S. E. 13) ; *Riley* v. *Royal Arcanum,* 140 *Ga.* 178 (78 S. E. 803) ; *Neil* v. *Dow Law Bank,* 138 *Ga.* 158 (74 S. E. 1027) ; *Lippincott* v. *Behre,* 122 *Ga.* 543 (50 S. E. 467) ; *Love* v. *National Liberty Insurance Co.,* 157 *Ga.* 259, 270 (121 S. E. 648). Obviously, then, after a rule had been rendered upon a rule nisi based upon these separate and distinct fi. fas., an objection on the ground of misjoinder was clearly without merit, and the conclusiveness of the judgment would have constituted the primary and fundamen-

tal answer to the objection. Consequently the question as to misjoinder, raised in the manner stated, was not before the court for determination in the *Taylor* case, and the portion of the decision relating to that subject was obiter, and hence not binding as authority. In any view, the *Taylor* case was so widely different from the case as stated by the Court of Appeals that it does not afford the slightest authority for an affirmative answer to the question certified. See *Sharman* v. *Walker*, 68 *Ga.* 148. It is the opinion of this court that the question as propounded by the Court of Appeals does not show any sufficient basis for joinder of the parties in the type of action indicated.

*All the Justices concur, except*

BELL and JENKINS, JJ., who dissent from the ruling in the second division of the decision.