*1480
 
 PER CURIAM:
 

 This diversity action requires an interpretation of Georgia statutes O.C.G.A. § 13 — 1— 13 and O.C.G.A. § 23-2-32(b). Because a question of state law appears to control the outcome of this case, we certify the question to the Georgia Supreme Court under Rule 36 of the Georgia Rules of Appellate Procedure.
 

 CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO RULE 36 OF THE SUPREME COURT OF GEORGIA, TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF.
 

 (1)
 
 Style of the Case.
 
 The style of the case in which certificate is made is
 
 Gulf Life Insurance Co., Appellant v. Sydney M. Folsom, Folsom Construction Co., Randall M. Folsom, and Lawanda F. Rig-don, Appellees,
 
 Case No. 86-8013, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Middle District of Georgia, Albany-Americus Division.
 

 (2)
 
 Statement of the Facts.
 
 Between March, 1974, and March, 1977, four $100,-000.00 insurance policies were issued by the appellant, Gulf Life Insurance Company (Gulf) on the life of appellee Sydney M. Folsom, the ex-president of appellee, Folsom Construction Company (Folsom). A total of $17,396.00 in premiums were paid for these policies. Folsom became the owner of these policies and on June 16, 1981, applied to Gulf for the maximum amount available under the policies based upon their cash value. Later in June, 1981 Folsom received a total of $56,530.65 from Gulf representing the cash value of the policies. A year later, on June 15, 1982, Folsom again sought the maximum value of the policies and received $62,425.39 from Gulf.
 

 At the time that Folsom made its second application for the maximum value of the policies, they actually had no value. The second payment of over $60,000.00 was the result of a computer mistake. This mistake occurred when the premiums that were due on the policies in March of 1982 were not paid on their due date or within the grace period. Because the premiums were not paid, Gulf's computer automatically checked the cash value of the policies to determine if there was any cash value remaining. When the computer checked the Folsom policies it found that there was no cash value and therefore recorded a lapse of those policies. Subsequently, the premiums on the policies were paid and the policies were reinstated, but in the course of reinstating the policies the computer did not pick up the 1981 loans as part of the information relating to these policies. It is undisputed that this error stemmed from Gulf’s programming system which had been prepared by one of its subsidiaries. Thus, when Folsom applied for the second maximum loan, the loans made in 1981 were not disclosed by the computer and the computer printed out checks for the loan value as if there had been no pre-existing loans on these policies. It is uncontested that Folsom did not play any role in this error. Furthermore, Gulf had in its possession the file on the policy which contained the correct information and a clerk checking the file manually would have discovered the 1981 requests.
 

 In early 1983, agents of Gulf called Randall M. Folsom, the insured’s son, suggesting that the coverage be converted to a different type of policy. The premiums for the upcoming year were not yet paid and Folsom had to decide whether or not to keep paying the premiums on the policies.
 
 *1481
 
 Sydney Folsom, the insured, was no longer the president of the company. Randall Folsom, as the new president of Folsom, asked Gulfs agent to determine the outstanding cash surrender value of the policies. He was told that their value was $3,500.00. This information was incorrect because it was based upon the same computer mistake that resulted in the second payment of the maximum loan value of the policies. Randall Folsom decided not to pay the premiums for the next year but instead sought the cash surrender value of the policies. As a result of the signing of these cash surrender agreements, each policy was immediately cancelled.
 

 Randall Folsom never received the $3,500.00 so he contacted one of Gulfs agents. The agent said he did not understand the problem but he would check on the matter. On September 8, 1983 Folsom received a letter from Gulf stating that the loan value of the policies had been overpaid and that Folsom owed Gulf $45,326.84. In addition, Gulf refused to pay Folsom the $3,500.00 that represented the mistaken cash surrender value of the policies. After Folsom did not return the money, Gulf instituted this action for money had and received in the United States District Court for the Middle District of Georgia. Gulf claimed that it was entitled to the $45,-326.84 that had been mistakenly paid to Folsom. Folsom filed a counterclaim seeking to recover the $3,500.00 which it alleges Gulf is obligated to pay because of the cash surrender agreements. The district court granted Folsom’s motions for summary judgment as to both Gulf’s claim for money had and received and Folsom’s counterclaim. The district court found that the overpayment was caused solely by Gulfs negligence, and therefore O.C.G.A. § 13-1-13 dictated the grant of summary judgment to the defendant.
 

 O.C.G.A. § 13-1-13 provides the following:
 

 Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release personal property from detention or to prevent an immediate seizure of personal property.
 

 Georgia courts have held that this section applies not only when one pays money with knowledge of all the facts but also when one pays by mistake without a valid reason for failing to ascertain the truth.
 
 See, e.g. Atlanta Coach Co. v. Simmons,
 
 184 Ga. 1, 190 S.E. 610 (1937);
 
 Barker v. Federated Life Ins. Co.,
 
 111 Ga.App. 171, 141 S.E.2d 206 (1965).
 
 See also Bohannon v. Manhattan Life Ins. Co.,
 
 555 F.2d 1205, 1212 (5th Cir.1977).
 
 [1]
 
 In addition, Georgia courts have placed the burden on the party seeking recovery to prove that the payment was not made voluntarily because at the time of the payment material facts were not known, or because a valid reason existed for the failure to ascertain the truth.
 
 New York Life Ins. Co. v. Williamson,
 
 53 Ga. App. 28, 184 S.E. 755 (1936). Relying on this interpretation of O.C.G.A. § 13-1-13, the district court concluded that Gulf could not recover its overpayment to Folsom because there was no valid reason for Gulf’s failure to ascertain the true value of Folsom’s policies.
 

 There is another code section, however, that sheds doubt upon this conclusion. O.C.G.A. § 23-2-32(b) provides that “[rjelief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby.” It is clear that this code section applies to actions for money had and received.
 
 See Barton & Ludwig Inc. v. Thompson,
 
 170 Ga.App. 187, 316 S.E.2d 786 (1984);
 
 J.C. Penney Co., Inc. v. West,
 
 140 Ga.App. 110, 230 S.E.2d 66 (1976).
 
 *1482
 
 There appears to be a conflict between O.C.G.A. § 23-2-32(b) and O.C.G.A. § 13-1-13, and we have been unable to find a Georgia case that resolves this conflict.
 

 (3)
 
 Question to be Certified.
 
 In an action for money had and received, can the plaintiff recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment?
 

 The particular phrasing used in this certified question is not intended to restrict the Supreme Court’s consideration of the issue in its analysis of the record certified in this case. This latitude extends to the Supreme Court’s restatement of the issue or issues and the manner in which the answers are given.
 
 See Martinez v. Rodriguez,
 
 394 F.2d 156, 159 n. 6 (5th Cir.1968).
 

 The clerk of this court is directed to transmit this certificate, as well as the briefs and record filed with the court to the Supreme Court of Georgia and simultaneously to transmit copies of the certificate to the attorneys for the parties.
 

 [1]
 

 . In
 
 Bonner
 
 v.
 
 City of Prichard,
 
 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.